Richard S. CRAWFORD, Plaintiff-Respondent,

v.

Emma SMITH, Defendant-Appellant.

No. 56171.

Supreme Court of Missouri, En Banc.

Sept. 13, 1971.

**530**

Joseph G. Stewart, St. Louis, for respondent.

William R. Kirby, St. Louis, for appellant.

SEILER, Judge.

Plaintiff sued defendant for damages growing out of fraud, allegedly practiced on him by defendant in two related transactions, alleging that defendant represented that she owned certain common stock which she offered to sell him; that plaintiff agreed to purchase the stock and paid $4,250 for it; that defendant, in fact, did not own the stock and that the representations were made for the purpose of defrauding plaintiff; that the stock had increased in value to $11 per share. Plaintiff sought damages in the sum of $27,500. Defendant's answer to the petition was a general denial and the affirmative defense of laches. A jury trial resulted in a verdict and judgment for plaintiff for $9,500. Defendant appeals.[1] We affirm.

The evidence at the trial established that as of October, 1961, plaintiff Richard Crawford, defendant Emma Smith, and Eugene Schweigler, had been close friends for over eight years, during which time they were sales representatives for A. G.

---

1. The case here by our order of transfer from the St. Louis Court of Appeals, Sec. 10, Art. V., 1945 Constitution, V.A.M.S.

The Court of Appeals had reversed the judgment and remanded the cause for a new trial.

Edwards & Sons, investment brokers. Mrs. Smith and Mr. Schweigler had been keeping company since about 1954 and were very close. During defendant's long acquaintance with plaintiff, she had never given plaintiff cause to distrust her. On or about October 23, 1961, Mrs. Smith represented to the plaintiff that she owned some shares of Marine Petroleum Trust common, which she offered to sell him. After thinking it over and checking the price, plaintiff, on October 25, 1961, made what he thought was a purchase from defendant of 1,000 shares of Marine Petroleum Trust at $2.00 per share. This took place in defendant's apartment where plaintiff, defendant, and Schweigler were present. Schweigler prepared a written memorandum, which was signed by defendant and Schweigler, and read:

"10/25/61

Received from Richard Crawford $2000 for payment of 1000 shares com Marine Petroleum Trust @ $2.00 per share. Shares to be transferred from the name of Emma L Smith to Richard Crawford."

Plaintiff then gave Mrs. Smith his check for $2,000.

A few days later, Mrs. Smith offered to sell additional shares of Marine Petroleum Trust. On October 31, 1961, plaintiff gave defendant a check for $2,250 for an additional 1,500 shares of Marine Petroleum Trust, relying on her representation that she owned the stock. This transaction also occurred in Mrs. Smith's apartment, again with Schweigler present.

Plaintiff did not receive the securities. He repeatedly requested them, but it was not until some four or five years later that defendant admitted that she had never at any time owned any shares of Marine Petroleum Trust.[2] She did not return the money.

The evidence was that the market value of Marine Petroleum Trust common, at the time of the trial, was $14.25 per share. An offer of proof was made by plaintiff, but rejected by the court, and so not heard by the jury, that the market price of the stock in 1966 was $11 per share.

Defendant's defense was that plaintiff knew she had no such securities; that these transactions were not sales at all, but were loans to Schweigler concealed as sales because of plaintiff's wife's opposition to any additional unsecured loans to Schweigler, all of which was resolved against defendant by the jury. The trial court permitted defendant to introduce parol evidence about the second transaction being a loan, but as to the first transaction, the trial court ruled that the writing which defendant signed was contractual and would not permit defendant to introduce parol evidence to nullify its terms.

■ Defendant's first claim of error concerns action in the trial court in limiting defendant's voir dire examination of the jurors. Defendant attempted to inquire as to whether they could follow a burden of proof instruction that fraud must be proved by clear, cogent, and convincing evidence. The trial court sustained plaintiff's objection to this line of inquiry. This was not error. See Baker v. Bickel (Mo.Sup.), 386 S.W.2d 105, 111, where the court held that in a fraudulent misrepresentation case tried to a jury, the

2. During this time the stock apparently was going up, which may have explained plaintiff's apparent lack of concern over defendant's failure to deliver. As long as it was going up, plaintiff might see no urgency with respect to delivery, so long as he had continued trust in defend-ant. Had the stock been going down, plaintiff may well have wanted to sell and cut his loss. To do so would have required production of the stock, which would have meant insistence by plaintiff that defendant turn it over to him, no matter whether plaintiff still trusted defendant or not.

burden of proof is not greater than in other cases tried to a jury, and that the proper burden of proof instruction is MAI 3.01.

■ Defendant also raises as error the refusal of the trial court to allow defendant and her witness, Schweigler, to testify the transaction of October 25 was a loan, not a sale. The ruling was based upon the parol evidence rule and the court's conclusion that such testimony would vary the terms of the document, which the court considered contractual. We agree it is contractual, as it contains all the elements of a contract.

■ In Dowd v. Lake Sites, Inc., 365 Mo. 83, 276 S.W.2d 108, this court held that when the person allegedly defrauded brings an action in fraud for damages, he stands upon the contract. In so standing on the contract, plaintiff treats the contract as having binding legal effect as the agreement of the parties, and it therefore follows that defendant could not introduce evidence which would tend to vary the terms of the agreement as to its being a contract of sale. It is to be noted that defendant did not plead or claim that she had been induced to sign the agreement by reason of fraud. As illustrated by Smith v. Tracy (Mo.Sup.), 372 S.W.2d 925, 938, the parol evidence which is admissible as an exception to the rule where fraud is alleged, is evidence *in support* of the plea. The evidence offered by defendant was not in support of any plea of fraud; the fact that plaintiff was relying upon defendant's fraud as a basis for his action would not, of course, mean that defendant, the one charged with fraud, could thereby rely on the fraud exception to introduce parol evidence. We rule that the trial court was correct in its ruling.

Defendant also contends it was error to give the damage instruction, which was MAI 4.01, the only MAI damage instruction in force when this case was tried in 1969, and which read:

> "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrences mentioned in the evidence",

because there was no proof as to "difference in actual value of the stock and the price" at which it was sold to plaintiff, and no proof as to the value of the stock at the time of discovering the misrepresentation.

■ In Monsanto Chemical Works v. American Zinc, Lead & S. Co. (Mo.Sup.), 253 S.W. 1006, 1011, we held that where one is induced to part with money by fraud, " * * * the damages cannot be less than the money * * * he has parted with * * *." This is not a ceiling, but a floor. Certainly it cannot be said there was *no* evidence to support the damage instruction, because without question plaintiff was out the $4,250 and had nothing to show for it. Additionally, as is pointed out in 37 C.J.S. Fraud § 141, p. 467: " * * * where the profits lost through fraud can be arrived at with reasonable certainty, they may properly be recovered." In the case at bar, plaintiff paid $4,250 for 2,500 shares of stock in 1961. This would be an average of $1.75 per share. Evidence of what was paid for the stock is certainly some evidence for the jury as to its value at the date of purchase, particularly where the parties to the transaction being stock brokerage salesmen would ordinarily be knowledgeable as to the market price of over the counter stocks. The only other direct evidence of the value of the stock at any subsequent date was from a broker who testified that at the date of trial, based on the current quotations for the stock appearing in the Wall Street Journal, the market price of the stock at that time was $14.25 per share, which evidence came in without objection.

██ It is to be remembered that we are dealing here with a rather unusual situation: this is not a case where a misrepresentation was made as to the value of the property purchased, with the property proving to be worth much less; the misrepresentation here was as to the seller's ownership, and the property in question became worth more, not less, than what the buyer paid for it. The buyer repeatedly tried to get the seller to deliver the property to him, but she did not divulge for four or five years that she in truth owned no such stock at all, thus enlarging the period during which plaintiffs damages might accrue, because it was not until then that plaintiff learned that he was not to get the benefit of his bargain and that if he desired ownership of 2,500 shares of Marine Petroleum Trust common he would have to purchase it elsewhere. His damages, therefore, should have been measured by what the market price of the stock was at the time plaintiff first discovered, or should have discovered, the fraud, in accordance with the general rule in Missouri that this is when the right of action for damages accrues, Blackmore v. Sisson (Mo.App.), 139 S.W.2d 1084, 1093. Any other rule, where the subject matter is of fluctuating value, such as common stock traded over the counter, would encourage fraudulent sellers: if they fail to deliver the stock, but the price subsequently goes down, they could then deliver the stock; if the price goes up, they need only refund the original purchase price.

While an offer of proof was made that the market price of the stock at the time of the discovery of the fraud was $11 per share, the offer was refused and the jury did not hear this evidence. The only evidence the jury heard was the purchase price of $1.75 per share and the market price of $14.25 per share at the time of trial, yet the verdict returned was for $9,-500, which would be $3.80 per share, from which only defendant has appealed. Plaintiff does not contend the verdict is inadequate and defendant has not at any time contended it was excessive.

██ Ordinarily, failure to have evidence in the record of a value of at least $3.80 per share at the appropriate time would call for a remand on the issue of damages, but we are not convinced there is prejudicial error involved under the circumstances of this case.

██ The jury allowed plaintiff approximately twice what he paid for the stock. A jury has great leeway in assessing damages and here the jury knew that plaintiff had expended $4,250 to start with, had been out the use of his money over a period of years,[3] and that the stock had a history of a substantial increase in market price after plaintiff thought he had bought it. The jury actually was pretty moderate in the size of the verdict.

Defendant does not point to any misdirection in the instruction given and made no effort to obtain a further and more specific instruction. We believe what was said in Boten v. Brecklein (Mo.Sup.), 452 S.W.2d 86, 93, on measure of damage instructions in unusual cases, is worth repeating here: " * * * It is a short, simple, general instruction which directs an award which will fairly compensate plaintiffs for their damages. It is contemplated by MAI that where a general instruction of this kind is given the jury will be properly advised by the argument concerning details. If the attorneys disagree as to the elements of and proper measure of damages any questions raised should be settled by the court either at the instruction conference or by its rulings upon objections made during the course of the argument. No complaint is made as to any ruling of

3. Having paid a fixed amount of money, plaintiff would be entitled to interest thereon from date of payment, Salmon v. Brookshire (Mo.App.), 301 S.W.2d 48, 54; Dunham v. Tenth Street Garage & Sales Co. (Mo.App.), 94 S.W.2d 1096, 1099.

the court concerning the argument relating to damages and we will accordingly assume that no error occurred in that regard.

" * * * Moreover, if defendants were of the view that there was no applicable MAI form and that the one offered was too general it was their duty to offer a more specific one."

We would not, in any event, do more than remand this case for a new trial limited to the issue of damages, and not being convinced that defendant has demonstrated any prejudicial error in regard to the measure of damage instruction used or in the verdict returned, we see no useful purpose to be served in such a limited remand, particularly where no claim is made on one side that the verdict is inadequate or on the other that it is excessive.

▪ Defendant's final point is that the trial court erred in overruling defendant's motion for a more definite statement. This is based on the assertion that the petition did not specifically state whether the contract was oral or written or what the alleged fraud was based on, and that the petition failed to set forth the date when plaintiff first learned defendant was not the owner of the stock. We see no error in the trial court's action. It was clear from the petition the fraud claimed was false representation as to ownership of the stock. While it is true the petition does not state whether the contract was written or oral, this could easily have been determined by interrogatories, as is true as to the date when plaintiff first learned defendant did not own the stock. No doubt the trial court would have been within its sound discretion had it sustained the motion to make more definite, but it also was within its sound discretion in ruling the other way, in our opinion. Certainly the trial court's action does not constitute prejudicial error or grounds for a new trial in the circumstances of this case.

Judgment affirmed.

All of the Judges concur.