**Kenneth L. BECK, Plaintiff-Respondent,**

**v.**

**MODERN AMERICAN LIFE INSUR-ANCE CO., Defendant-Appellant.**

**No. 10840.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 9, 1979.

Motion for Rehearing and Transfer
Denied Oct. 29, 1979.

Application to Transfer Denied
Dec. 6, 1979.

Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, David B. Rogers, Smith, Lewis & Rogers, Columbia, for plaintiff-respondent.

Gerald H. Lowther, C. Ronald Baird, Craig F. Lowther, Lowther, Johnson & Baird, Springfield, for defendant-appellant.

BILLINGS, Presiding Judge.

Suit by plaintiff Kenneth L. Beck against defendant Modern American Life Insurance Company for breach of an oral contract. Plaintiff alleged that defendant had breached its contract by refusing to pay him a one-half percent commission on all renewal premiums received by defendant on policies sold while the plaintiff was "Vice-President" of defendant. Plaintiff claimed that, pursuant to an April 6, 1966 oral contract, he should have received these payments for five years and 330 days subsequent to his termination of employment on December 31, 1969. The jury returned a verdict in the amount of $61,161.10 principal and $19,221.16 interest for the plaintiff. We affirm.

Defendant is an insurance company that was founded in November 1963 with its principal place of business in Springfield, Missouri. The organizational structure of the company, "in its early days", consisted of the Board of Directors, the "Top Three", Regional Vice-Presidents, District Managers and Agents.

The "Top Three" referred to W. E. Parker, president; Lloyd Parker, executive vice-president; and M. W. Crabtree, senior vice-president. These "Top Three" were responsible for the organization and the running of the day-to-day operations of defendant. They reported to the Board of Directors. Immediately below the "Top Three" were the four Regional Vice-Presidents. The Regional Vice-Presidents supervised certain geographical regions of Missouri that contained several "districts". (The State of Missouri had been divided into four regions by defendant, with de-

fendant originally only doing business in the State of Missouri). Immediately below the Regional Vice-Presidents were the District Managers. They were in charge of the agents in the various "districts" within a "region". These "districts" usually consisted of just several counties.

On February 5, 1964, plaintiff was employed by the defendant as an agent. Plaintiff was employed pursuant to a written agreement, referred to in the defendant company as the "Blue Agent's Contract". This contract provided, inter alia, that "If after three (3) years or more of satisfactory service to the company this contract is terminated and the agent has produced a minimum of One Hundred Thousand Dollars ($100,000) of life insurance, exclusive of term insurance each contract year, then the renewal commissions set out above shall be payable to the agent for an *additional period equal to the number of years of service.*" (Emphasis added).

Plaintiff was promoted to District Manager in August 1964. He served as District Manager until he was promoted to the Regional Vice-President position on November 8, 1965. His employment contracts for both of these positions were oral. On April 6, 1966, plaintiff was again promoted to a newly created position of Vice-President, that was above the Regional Vice-President's position and below the "Top Three" in the organizational structure. Plaintiff, Charles Fieth, and Raymond Ridge were all promoted to this position together in a meeting held on April 6, 1966 in W. E. Parker's office in Springfield. (Prior to the creation of this new position there had been only two other "vice-presidents" and the position of an "area vice-president").

The employment contract was again oral for this position. At trial, the plaintiff introduced testimony to show that the "vesting" provision of his agent's contract had been "incorporated" into his prior oral contracts with the defendant and that this incorporation continued into the agreement of April 6, 1966.

Defendant's first assignment of error is that the trial court erred in refusing to direct a verdict for the defendant at the close of the whole case. In support of this assignment, the appellant urges that (1) the plaintiff "failed to establish by clear and unequivocal evidence the terms of his oral contract", and (2) the plaintiff failed to establish that the officers of the defendant had the requisite authority to bind the defendant to the terms of this oral contract of employment.

Whenever an assignment of error is based upon the trial court's refusal to direct a verdict, the appellate court will review the evidence presented at trial and will determine whether or not the plaintiff has introduced substantial evidence that tends to prove the facts essential to the plaintiff's recovery. If the plaintiff has introduced such substantial evidence, the trial court will not be found to have committed reversible error. *Brawley v. Esterly*, 267 S.W.2d 655 (Mo.1954); *Coleman v. Ziegler*, 226 S.W.2d 388 (Mo.App.1950). And, we review the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences, arising therefrom, and will disregard the defendant's evidence unless it aids the plaintiff's case. *Holland v. Lester*, 363 S.W.2d 75 (Mo.App.1962); *Stevens v. Waldman*, 375 S.W.2d 633 (Mo.App.1964); *Mincielli v. Sloan's Moving and Storage Company*, 303 S.W.2d 17 (Mo.1957).

Testimony from the plaintiff, Raymond Ridge, and Charles Fieth, established that their employment contract of April 6, 1966 incorporated by reference the terms of their earlier employment contracts with the defendant. The plaintiff introduced into evidence the contract that he had as an agent, and testified that Lloyd Parker, during this April 6, 1966 meeting, stated that the renewals for the vice-president position would "work just the same" and would be vested as per the agent's contract. The plaintiff testified that he had been told, before this April 6, 1966 meeting, that higher managerial positions within the company had renewals vested as per the agent's contract and that he taught this concept in training schools for new agents, with the

knowledge and acquiescence of members of the "Top Three". The plaintiff and others testified that the plaintiff had satisfactorily performed his duties for the defendant and that he voluntarily resigned from the company. The plaintiff further testified that during a January 1970 meeting he was told by W. E. Parker that he would not be receiving renewals pursuant to the April 6, 1966 agreement.

The plaintiff introduced testimony from Raymond Ridge, Charles Fieth, the "Top Three", and a member of the Board of Directors to show that the "Top Three" had acted with apparent authority. The testimony from these could clearly create a reasonable inference that the Board of Directors knew that the "Top Three" were creating and employing the plaintiff to the position of vice-president and had allowed the "Top Three" to set the plaintiff's compensation. The plaintiff, Raymond Ridge, and Charles Fieth indicated that they knew that the Board of Directors knowingly permitted the "Top Three" to hire, create, and set the compensation of employees and that they reasonably believed that the "Top Three" had the authority to give "vested renewals".

The above is a sample of the testimony and evidence introduced by the plaintiff and the defendant, but is sufficient to show that the requisite "substantial evidence" was introduced.

Defendant next contends the trial court erred in permitting Charles Fieth and Raymond Ridge to testify about their employment contracts with the defendant and cites *Pyrtle v. International Shoe Co.*, 291 S.W. 172 (Mo.App.1927) for the proposition that "evidence of other contracts between a party to a lawsuit and a third person to the suit, regardless of the similarities of the contracts, are not admissible . . . ."

In *Pyrtle*, the plaintiff, a former employee of the defendant, sought to recover a "bonus" on his wages pursuant to a special oral contract of employment. The plaintiff called two other employees of the defendant to testify that they were also promised a similar "bonus". The court stated the defendant's objection that this testimony related to "a distinct and independent matter that transpired between the defendant and a stranger, with which the plaintiff was in no way connected—in other words, that such matter related to a transactions inter alios, and that the testimony therefore was not relevant for any purposes in the case," and held that the introduction of this testimony constituted reversible error. 291 S.W. at 173.

The rule announced in *Pyrtle* is not applicable in the present case. Unlike *Pyrtle*, the testimony from Raymond Ridge and Charles Fieth did not relate to separate, independent, and distinct contracts of employment with the defendant. In the present case, the plaintiff, Raymond Ridge, and Charles Fieth were promoted to the position of Vice-President pursuant to the *same* oral contract of employment. Their contracts of employment were necessarily identical and contained the same provisions that the plaintiff claimed the defendant had breached. As such, it would be permissible for the plaintiff to prove the terms of his contract with the defendant through the testimony of Raymond Ridge and Charles Fieth. Their testimony asserted that the terms of the April 6, 1966 contract incorporated the provisions of earlier employment contracts with the defendant. It was, therefore, permissible for the trial court to permit Raymond Ridge and Charles Fieth to testify to these earlier employment contracts for the purpose of proving the contract provision that the plaintiff had claimed that the defendant had breached.

Defendant's third assignment of error is that "the trial court erred in overruling defendant's objection to plaintiff's comment in opening statement that it was plaintiff's 'understanding' that his Vice-Presidential contract would work the same as his agent's, district manager's, and regional vice-presidents contracts . . . ." Defendant cites case law to support the general rule that a *witness* ordinarily cannot *testify* as to his "understanding" of a matter. Defendant, however, has not raised an issue regarding the testimony of a witness. Defendant has limited its assign-

ment of error to the issue of whether or not the trial court committed reversible error in permitting a plaintiff to comment, in an opening statement, as to his "understanding" of an issue. Defendant cites no authority that would require this court to find reversible error because of a plaintiff's comment as to his "understanding" of an issue in an opening statement. The point is denied.

Defendant avers the trial court erred in giving Instruction No. 2, the plaintiff's verdict directing instruction. This assignment of error is essentially an attack upon Instruction No. 2 as being misleading and confusing to the jury. Instruction No. 2, a "not in MAI" instruction, read as follows:

"Your verdict must be for plaintiff if you believe:

First, defendant agreed to pay plaintiff a commission of one-half percent of all renewal premium income, less endowments, paid to defendant on life insurance policies issued by it during plaintiff's service as vice-president, and

Second, defendant agreed that if after three (3) years or more of satisfactory service to defendant by plaintiff that plaintiff's employment be terminated, then the said one-half percent renewal commissions would be payable to plaintiff for an additional period equal to the number of years service, and

Third, the agreement was made on behalf of defendant by officers of defendant acting within their apparent authority, and

Fourth, plaintiff rendered satisfactory service and full performance to defendant from February 5, 1964 to December 31, 1969, and

Fifth, from and after January 1, 1970, defendant has failed to pay plaintiff any of the said one-half percent renewal commissions, and

Sixth, plaintiff was thereby damaged unless you believe that plaintiff is not entitled to recover by reason of Instruction Number 3 or Instruction Number 4.

Acts were within the 'apparent authority' as that term is used in this instruction, if:

1. The defendant knowingly permitted its officers to so act, and

2. Plaintiff knew that the defendant knowingly permitted its officers to so act, and

3. Plaintiff, acting reasonably and in good faith, actually believed defendant's officers had the authority to so act, and

4. Plaintiff relied on the authority of defendant's officers, and

5. Plaintiff will be damaged if said acts of its officers are not binding on the defendant."

Defendant contends that the first and fifth paragraphs of Instruction No. 2 confused and misdirected the jury as to what renewals plaintiff was seeking to recover from defendant.

■ The test for determining the correctness of an instruction rests in whether the average juror will correctly understand therefrom the applicable rules of law. *Spritz v. St. Louis Public Service Company*, 341 S.W.2d 790 (Mo.1961); *Fairley v. St. Louis Public Service Company*, 389 S.W.2d 378 (Mo.App.1965); *Koirtyohann v. Washington Plumbing & Heating Co.*, 494 S.W.2d 665 (Mo.App.1973). An instruction is to be considered as a whole and an independent phrase or clause should not be considered apart from its context. *Spritz*, supra.

■ The first paragraph of Instruction No. 2 clearly referred to renewals *"during plaintiff's service as vice-president,"* and the second paragraph referred to renewals to be paid *after* the termination of the plaintiff's employment with the defendant. The fourth paragraph stated that the plaintiff rendered service to the defendant from February 5, 1964 to *December 31, 1969.* The fifth paragraph stated *"from and after January 1, 1970,* defendant failed to pay plaintiff any of the *said* one-half percent renewal commissions . . . ."* Reading these paragraphs in conjunction with each other, it is clear that the average juror would have correctly understood that plaintiff was seeking to recover renewals due after his termination of employment with the defendant.

■ Defendant further asserts that the court erred in giving Instruction No. 2 on

the basis that: (1) There was no substantial evidence introduced to support a submission on such an instruction; and (2) Instruction No. 2 submitted a claim for five years and 330 days, which is at variance with the pleadings that he was entitled to one year of renewals for each year of service after three years of satisfactory and continuous service, and was, therefore, based on incompetent evidence and imposed false issues in the case. We find no merit to defendant's assertions.

Defendant's fifth assignment of error is that the trial court erred in giving Instruction No. 7, in that Instruction No. 2, together with Instruction No. 7, constituted a quantum meruit theory submission, when only an express oral agreement was pleaded.

Instruction No. 7 was MAI 4.01, "without modification", and read as follows:

"If you find the issues in favor of the plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence."

The defendant essentially argues that plaintiff should have offered an instruction that specifically requested the amount he was seeking to recover under his breach of contract theory. It is the defendant's position that by not requesting a sum certain, and using a general damages instruction, the plaintiff has changed his theory of recovery.

The Missouri Supreme Court has specifically held that MAI 4.01 is an appropriate damages instruction in a breach of contract case. *Boten v. Brecklein*, 452 S.W.2d 86 (Mo.1970). Of significance, the court in *Boten* stated:

"It [MAI 4.01] is a short, simple, general instruction which directs an award which will fairly compensate plaintiffs for their damages. It is contemplated by MAI that where a general instruction of this kind is given the jury will be properly advised by the argument concerning details. If the attorneys disagree as to the elements of and proper measure of damages any questions raised should be settled by the court either at the instruction conference or by its rulings upon objections made during the course of the argument. No complaint is made as to any ruling of the court concerning the argument relating to damages and we will accordingly assume that *no error occurred in that regard.*" 452 S.W.2d at 93.

We find that the court did not err in giving Instruction No. 7. Instruction No. 7, in combination with Instruction No. 2, did not change the theory under which plaintiff was seeking recovery. These instructions properly allowed the jury to determine the amount and issue of breach of contract damages according to the details presented in the argument of both counsel. As stated in *Boten,* no complaint is made as to any ruling of the court concerning the argument relating to damages and we will accordingly assume that no error occurred in that regard.

Defendant's sixth assignment of error is that the trial court erred in giving Instruction No. 8, a prejudgment interest instruction because: (1) there was no evidence of a "demand" for payment by the plaintiff nor any evidence of when the payments were "due" under the plaintiff's oral contract; (2) Instruction No. 8 was misleading to the jury and gave the jury a roving commission by not requiring the jury first to find for the plaintiff under Instruction No. 2 before they awarded prejudgment interest; and (3) Instruction No. 8, in conjunction with Instruction No. 7, unduly emphasized damages and misled the jury.

Instruction No. 8, a "not in MAI" instruction, read as follows:

"If you assess damages in favor of the plaintiff, then you must award plaintiff interest at the rate of six percent per annum on the sums due plaintiff from the date, after demand for payment, when said sums were due, if you believe:

First, plaintiff made a demand on defendant for payment, and

Second, the sums due plaintiff could have been determined with certainty on the date said sums were due."

During the trial, the plaintiff testified as follows:

"Q. Were you, in fact, paid the commissions—your renewal commissions that you expected to be paid after you resigned from the company? I'm talking about the vice-presidential renewals.

A. No, sir.

Q. When did it first come to your attention that you would not be paid?

A. January the 23rd, 1970.

Q. And what happened on that day?

A. I received a check in the mail.

Q. And what did it show?

A. It didn't show very much. It was very small.

Q. Do you know what you were paid for?

A. Agent's renewals and district manager's renewals and regional vice-president's renewals.

Q. Was that a surprise?

A. Yes sir.

Q. Did you point this out to anybody in the company?

A. I made a trip to the home office to see Mr. Tiny Parker.

Q. And what can you tell the jury what was said at that meeting?

A. I went in and told him—about the check I'd received, and I wondered if there'd been a mistake. And he said there hadn't been. And I was very shocked and dismayed and couldn't understand why I had not received the vice-president's renewals.

Q. Did he tell you that you would ever be paid the renewals?

A. He told me I would not be receiving them.

Q. At any time?

A. That's right.

Q. Was there anything else said?

A. I asked him—I was dumfounded really. And I reviewed him the times

that I had been promised. And his reaction was, 'Well, you never heard me promise that, did you?' And he says 'Name one time.'"

Plaintiff further testified that he was to have been paid vice-presidential renewal commissions for an additional period of years equal to the number of years of service and introduced testimony from an actuary on the amount of interest at issue.

■■■ This testimony, considered in the light most favorable to the plaintiff and with all reasonable inferences therefrom, constitutes substantial evidence as to a "demand" and when the renewal payments became due. We hold that the trial court did not err in submitting Instruction No. 8 on the basis of insufficient evidence. Defendant's second and third contentions have no merit. Instruction No. 8 was not misleading and did not give the jury a "roving commission". The average juror would have correctly understood that he could not have awarded "interest" to the plaintiff, under Instruction No. 8, unless he initially found that the defendant owed the plaintiff under his theory of recovery. The trial court did not err in giving Instruction No. 8 separate from Instruction No. 7. These two instructions did not unduly emphasize damages, nor mislead the jury.

■■ Defendant also contends the word "obligation" in Instruction No. 5, and the lack of referral back to Instruction No. 4, was misleading and suggested to the jury that the defendant owed the plaintiff some "obligation" other than that set forth in the plaintiff's verdict director.

Instruction No. 4, a "not in MAI" instruction, read as follows:

"Your verdict must be for the defendant if you believe plaintiff agreed that if he went to work for another life insurance company, he would forfeit his vested renewal commissions earned as vice-president. Unless you find for plaintiff under Instruction Number 5."

Instruction No. 5, a "not in MAI" instruction, read as follows:

"Your finding must be for the plaintiff on the defense that he went to work for

another life insurance company if you believe:

First, defendant breached its obligation to pay plaintiff vested renewal commissions earned as vice-president, and

Second, said breach occurred before plaintiff went to work for another life insurance company."

As we have previously stated, the test for determining the correctness of an instruction rests in whether the average juror will correctly understand the applicable rule of law. *Spritz*, supra. Instruction No. 4, the defendant's affirmative defense instruction, referred the jury to Instruction No. 5. Instruction No. 5 specifically required *only* a "finding . . . on the defense", by the jury. It is apparent that the average juror would not have been misled into believing that he could reach a verdict for the plaintiff on any "obligation" other than that given in the verdict directing instruction. We find that the court did not err in giving Instruction No. 5.

■ Defendant's final assignment of error is that the trial court erred in not granting the defendant a mistrial when the plaintiff, in his closing argument, commented that eighteen and one-half (18½) million dollars worth of premiums would go directly to the shareholders. The record shows the following:

"PLAINTIFF'S ATTORNEY: Eighteen and a half million dollars in premium income came in he could claim a commission on. You know where that went, it all went into the company, the stockholders.

That's the purpose—

DEFENDANT'S ATTORNEY: If the Court please now, I object to that. It's a completely erroneous statement, outside of the evidence.

THE COURT: Sustained.

PLAINTIFF'S ATTORNEY: Eighteen and a half million dollars upon which he was claiming that commission. Now, that was one purpose of the renewals and making them work. And it worked. He worked.

The other purpose was, what other retirement benefit did he have? Now,

this—In this day, ladies and gentlemen, people look to their retirement.

DEFENDANT'S ATTORNEY: If the Court please, that's outside of the evidence, we object to that.

THE COURT: Overruled."

■ Defendant did not request the jury be instructed to disregard the comment of the plaintiff after the trial court sustained the defendant's objection, nor move for a mistrial. Defendant received all of the relief it requested at the time when the "comment" was made. Where the action of the court is responsive to an objection made by counsel the court is not to be convicted of error for failure to take other and further curative steps not then sought by the party now complaining. *Hiken v. Wilson's Shoes*, 317 S.W.2d 673 (Mo.App.1958).

The judgment is affirmed.

All concur.