Kenneth R. STREBLER, et al.,
Respondents,

v.

Raymond J. RIXMAN, Jr., Appellant.

No. 42576.

Missouri Court of Appeals,
Eastern District,
Division No. 3.

May 19, 1981.

Mark M. Wenner, Clayton, for appellant.

William Roussin, Clayton, for respondents.

REINHARD, Judge.

Plaintiffs sued defendant for fraudulent misrepresentation in the sale of a boat. The case was tried, and the jury returned a verdict for plaintiffs in the amount of $6,000 actual damages and $3,000 punitive damages. The trial court set aside the punitive damages award, and remitted the

actual damages to $4,995. Defendant appeals.

The evidence shows the following: On August 1, 1976, defendant via a St. Louis newspaper, advertised his 1963 Pacemaker thirty-foot cabin cruiser for sale. Plaintiffs saw the advertisement and contacted defendant. On the evening of August 4, 1976, plaintiffs met defendant at the marina on the Mississippi River where the boat was docked.

Defendant showed plaintiffs various features aboard the boat, and offered to let them look around the boat, which they did. During plaintiffs' tour of the boat, defendant opened several of the hatches leading into the boat's below-deck area, or bilge, in which some of the planking and supports forming the boat's hull could be seen. Plaintiff-husband looked into the bilge through the hatchways but did not actually enter that area. Defendant then took plaintiffs for a brief cruise on the river after which they left. The meeting between plaintiffs and defendant lasted between twenty and forty minutes. Three days later, on August 4, plaintiffs bought the boat for $4,995, taking out a $6,000 loan to cover the purchase price and other expenses.

On September 18 of that year, at the suggestion of a neighbor, plaintiffs had Joseph Kretschmer, owner of a marine repair service, inspect the boat. At trial, Mr. Kretschmer testified that his physical inspection of the boat's bilge disclosed severe "dry rot,"[1] that extensive repairs would have been necessary to save the boat, and that he advised plaintiffs the boat was unsafe and should not be used. He estimated the cost of repairing the boat to be $5,000.

Plaintiffs estimated that during the fall of 1976, they used the boat a total of eight or nine times. Thereafter, the boat was stored for the winter, and in the spring, plaintiffs pulled it from the water and "dry docked" it. They subsequently attempted to repair the boat themselves, but decided the job was beyond their ability, and ultimately junked the boat.

Defendant admitted that he had owned the boat for some eight years, that he was familiar with the problem of dry rot, and that he had had the boat repaired three times for dry rot damage, the last time only several months before plaintiffs bought it. The plaintiffs' expert testified that in his opinion the dry rot in the boat's bilge would not have developed rapidly, and that the condition of the boat during the several months before plaintiffs bought it would have been substantially the same as when he inspected it.

■ Defendant contends that plaintiffs failed to make a submissible case, and that the court should have directed a verdict in his favor. We note that where failure to grant a directed verdict for the defendant is the error asserted, the appellate court must determine whether or not the plaintiff presented substantial evidence at trial supporting his theory of recovery. *Beck v. Modern Am. Life Ins. Co.*, 589 S.W.2d 98, 101 (Mo.App.1979). In reaching this determination, we must review the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences, and disregarding the defendant's evidence except as it aids the plaintiff's case. *Id.*

■ In order to establish a submissible case of fraud, plaintiffs had to show the following elements:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner contemplated;

(4) the hearer's ignorance of falsity of the statement;

(5) the hearer's reliance on its truth and the right to rely thereon; and

(6) proximate injury.

---

1. The record reveals that "dry rot" is a condition caused by a fungus which attacks damp wood. The action of the fungus causes the wood to deteriorate and eventually become powdery. Dry rot can spread from the area of the wood initially affected, as the fungus grows.

*Huttegger v. Davis*, 599 S.W.2d 506, 511 (Mo.banc 1980). The failure to establish any one of these elements is fatal to recovery. *Twiggs v. National Old Line Ins. Co.*, 581 S.W.2d 877, 880 (Mo.App.1979). Defendant argues that plaintiffs' case failed because there was no evidence of a false, material representation.

Plaintiffs' evidence was that defendant had told them before they bought the boat that it was "a good boat," that he had "had no problems with it," and that the boat would be good for weekend trips of plaintiffs and their children. We agree with defendant that the representation that the boat was "a good boat" was merely a general expression of defendant's opinion, not a statement relating to an existing fact. This statement, taken alone, was therefore not actionable. *Bauer v. Adams*, 550 S.W.2d 850, 853 (Mo.App.1977). *See also, Guess v. Lorenz*, 612 S.W.2d 831 (Mo.App. 1981).

With regard to the representation that defendant had "had no problems" with the boat, however, we have more difficulty. This is a representation of an objective fact, not merely the seller's opinion of value or quality. Further, knowledge of past structural damage, breakdowns, and other serious problems would be material to a potential buyer. See *Barylski v. Andrews*, 439 S.W.2d 536, 540 (Mo.App.1969).

Plaintiffs' evidence that defendant told them that he had had no problem with the boat, when viewed in light of the other statements and circumstances, created a jury question on the issue of whether defendant had made a representation of a material fact with knowledge of its falsity. Defendant's first point is denied.

Defendant next contends that the trial court erred in failing to grant him a directed verdict because plaintiffs failed to use ordinary care in accepting defendant's representations. Defendant argues that the fact the boat was thirteen years old should have put plaintiffs on notice of possible defects despite defendant's statements, and that plaintiffs should have made a fuller inspection or hired an expert to do so. It is established in Missouri, however, that:

A person to whom representations are made is entitled to rely on them when he lacks equal facilities for learning the truth; where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain; where the misrepresentations relate to latent defects; where, because of the hearer's ignorance and inexperience, it would be necessary to employ a third person to make an examination in order to learn the truth; and, where the employment of an expert would be required. *Shechter v. Brewer*, 344 S.W.2d 784, 788 (Mo.App.1961). See also, *Wolf v. Kansas City Tire & Serv. Co.*, 257 S.W.2d 408, 412 (Mo.App.1953).

In the case at hand, plaintiffs testified that although they had previously owned two small aluminum fishing boats, they were not familiar with wood hulled boats and the problems associated with them. Specifically, they did not know what dry rot was, nor how to detect its damage. Evidence at trial indicated that dry rot can be difficult to detect, that apparently sound timbers may be severely weakened without a change in external appearance, and that the most reliable means of finding dry rot is a thorough physical inspection with a sharp instrument. In addition, defendant's own testimony was that he had owned the boat for eight years, had done much work on it himself, was familiar with dry rot, and had had dry rot repaired several times in the past.

From the evidence, it would appear that defendant possessed superior knowledge and experience regarding dry rot aboard the boat, and that plaintiffs lacked equal facilities for learning the truth. Under the circumstances, the jury was entitled to conclude that plaintiffs did have a right to rely upon defendant's factual representations. Defendant's second point is denied.

In his final point, defendant argues that the trial court erred by giving the wrong damage instruction. Plaintiffs submitted and the court gave MAI 4.01, "Measures of Damages—Personal and Property," as the damage instruction. Plaintiffs admit

that the appropriate instruction would have been MAI 4.03, "Measure of Damages—Property—Misrepresentation."

Plaintiffs urge that defendant suffered no prejudice, and rely primarily upon *Crawford v. Smith*, 470 S.W.2d 529 (Mo.banc 1971) for support. In *Crawford*, the court found no prejudicial error in the use of MAI 4.01 in a fraud case. The *Crawford* case, however, was tried before the adoption of MAI 4.03. We conclude that the trial court did err in failing to give MAI 4.03 as the damage instruction, and that this error requires a reversal on the issue of damages only.

Affirmed in part, reversed in part, and remanded for new trial on the issue of damages only.

CRIST, P. J., and SNYDER, J., concur.