Ricky L. BASS and Rose A. Bass, Respondents,

v.

**FELD CHEVROLET, INC., Appellant.**

No. 44729.

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 26, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1982.

Application to Transfer Denied Feb. 23, 1983.

---

Stuart M. Haw, St. Louis, for appellant.

Kenneth K. Vuylsteke, St. Louis, for respondents.

CRIST, Judge.

Plaintiffs sought actual and punitive damages for fraudulent misrepresentations they claimed defendant made to them regarding the quality of a 1973 Omega Oldsmobile purchased from defendant on September 28, 1978. The jury returned a verdict for actual damages of $1,500 and punitive damages of $15,000. A remittitur of $12,000 from the punitive damage award was entered, so that the judgment stood at $1,500 actual damages plus $3,000 punitive damages.

Defendant asserts plaintiffs failed to prove fraud in that:

(1) Feld's salesman did not make a false material representation on which plaintiffs had a right to rely;

(2) The evidence failed to show "defendant did not know whether the representation was true or false";

(3) The statement of Feld's salesman that the car was in excellent condition and could be driven to California and back was a generally commendatory expression of opinion and not the kind of specific representation of fact upon which plaintiffs had the right to rely; and

(4) There was no evidence to show Feld's salesman knew his statements about the car were false or that he was conscious of his ignorance as to the truth or falsity of the statement.

The standard of review in determining the submissibility of plaintiffs' case is set out in *Strebler v. Rixman,* 616 S.W.2d 876, 877 (Mo.App.1981).

In reaching this determination, we must review the evidence in a light most favorable to the plaintiff, giving him the benefit of all reasonable inferences, and disregarding the defendant's evidence except as it aids the plaintiff's case.

The question to be resolved is whether the statements by Feld's salesman concerning the condition of the Olds constituted fraud on the part of the defendant.

Before plaintiffs came to defendant's place of business, the car was inspected by defendant's employees. An employee made a check list for the mechanics to check the shift pattern of the transmission, the transmission fluid, the oil and the motor. On August 16, 1978, prior to purchase, the Olds was checked, a windshield washer pump replaced, the transmission fluid and filter changed, but no repairs were made to the transmission.

The Olds was sitting on the front line of defendant's car lot. Its mileage read 62,000 miles on September 27, 1978. Feld's salesman told them the car was in A–1 condition and of top quality, Feld kept all the top quality cars on the front line so they would sell, and if they wanted to take the car on

vacation, they could take it to California and back with no problems. Salesman said he could sell the Olds to plaintiffs for $2,495 which was a little more than most cars of that age because the car was so clean and in such good condition. Plaintiffs were not going to California, but the salesman volunteered this remark about California when plaintiff husband asked if the car was in good shape. Plaintiff wife did not know if the salesman was saying it seriously or jokingly, but she made a joking matter out of it and laughed. Plaintiff wife believed the car was of A–1 quality and in excellent condition, and she could drive it to California, because she was going to take a trip to Arkansas to visit family.

Salesman told plaintiffs they could test drive the car. Plaintiff husband had trouble getting the car started before taking it for the test ride, but once started, it seemed to drive well. Because the gas tank was a little over empty, they just drove it around the block and did not exceed 30 m.p.h. Plaintiffs decided to take the car.

Financing arrangements still had to be made. Plaintiffs came back the next day and closed the deal. They bought a 50–50 service agreement on the car under which Feld would pay 50 percent of all items or repairs necessary to keep the vehicle in repair for 30 days or 2,000 miles, whichever was first. The service agreement would further allow a 15 percent discount on parts and labor for a period of 24 months after the 50–50 warranty period had expired. Plaintiff husband discussed the warranty with salesman and was aware of the terms. Plaintiff husband knew the car was not brand new and felt that a little safeguard against problems that might arise immediately would not hurt.

On their way home from Feld with their new used car, plaintiffs discovered it completely stalled and stopped when the speed approached approximately 35 m.p.h. They added gas to the near empty tank but that did not alleviate the problem. Plaintiff wife took the car back the next day to Feld, and Feld worked on it, but she had to take it back to them the next week for the same problem. The problem was fixed the second time. There was no charge for any of this.

Shortly thereafter, the car would not start, causing plaintiffs to buy a battery at Sears-Roebuck. The Sears battery soon ran down so that, once again, the car would not start. On October 10, 1978, they took the car back to Feld who replaced the alternator at no charge. This corrected the problem.

Shortly thereafter, the car began overheating and plaintiff wife thought she heard a grinding noise. The car was towed into Feld on October 24, 1978, at which time Feld repaired a water pump, gave plaintiff wife another car to drive and attempted, without success, to find the grinding noise. Feld did not charge for fixing the water pump or for the loan of the other car.

Within a week after the water pump went out, oil and gas began leaking near the carburetor and the gears shifted roughly. In short, plaintiffs took the car into Feld on an average of 1–2 times a week for 1½ months after purchasing the car. At one point Feld offered to put plaintiffs in a car of equivalent value, and suggested a green 1974 Pinto Wagon. Plaintiff stated they did not want another car but wanted the Olds fixed or the transmission checked out. Finally, the car was shifting roughly and plaintiff wife heard a klunk, so she took the car to Aamco within 1½ months of purchase where she was told the torque converter was burned out of the transmission and some other parts were scorched and grooved. Aamco estimated a cost of $374 to fix the transmission. She then asked Feld about getting the transmission fixed. Feld quoted a price of about $600, of which plaintiff would pay about $300, under their 50–50 warranty. Feld would not pay for work done by Aamco nor give as long as a warranty on the transmission work as Aamco, so plaintiff wife had the work done at Aamco and told Feld that she would see them in Court.

In response to an interrogatory, Feld stated its salesmen are provided with a check list from the mechanic who inspects

and services an automobile before sale. Feld's salesman admittedly did not check with defendant's mechanics before selling the car to plaintiffs, and he only assumed the vehicle had been checked by them.

■ Appellant's main contention is salesman's representations were commendatory expressions of opinion and not statements relating to existing facts. The transcript reveals that in addition to the California and A–1 quality statements, salesman told plaintiffs Feld puts its best used cars on the front line so they would sell, and this car was in such good condition they would have to pay a little more for it. Additionally, salesman stated he did not check with the mechanics about the condition of the car, nor did he examine the mechanic's checklist to see the car's recent history at Feld. A jury question was made on the issue of whether defendant had made a representation of a material fact with knowledge of its falsity. *Strebler v. Rixman*, 616 S.W.2d at 878.

■ Appellant further contends plaintiffs had no right to rely on the statements made by Feld's salesman. The right to rely on a representation is generally held to be a question of fact even though it lies within the province of the court to state abstractly the right to rely upon a false representation. In a specific case, the jury must determine from the facts introduced in evidence whether the party who claims to have been deceived had reason to rely upon the statements made to him. *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 83 (Mo.1967).

In conclusion, reviewing the evidence in a light most favorable to the plaintiff and giving them the benefit of all reasonable inferences, they made a submissible case of fraud. *Strebler v. Rixman*, 616 S.W.2d at 877.

The judgment is affirmed.

CRANDALL, P.J., and REINHARD, J., concur.