Robert V. **FOWLER,** Plaintiff-Appellant,

v.

Bobby Dean **DANIEL,**
Defendant-Respondent.

No. 40866.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Stephen C. Murphy, Cook, Murphy, Biesanz & Kenney, Clayton, for plaintiff-appellant.

Kortenhof & Ely, Amy R. Reichman, Joseph M. Kortenhof, St. Louis, for defendant-respondent.

SATZ, Judge.

This is a personal injury action tried before a jury. The verdict and judgment were for defendant. Plaintiff appeals. We affirm.

Plaintiff was injured in a one-car accident. He was a passenger in the car driven by defendant. Defendant was driving his car on January Avenue, in St. Louis County, in a westwardly direction. Near the scene of the accident, January curves North. Rather than making the curve, defendant's car crossed the opposite lane of traffic, left the traveled portion of the road and hit a tree. Plaintiff was injured.

Plaintiff submitted his case on the theory of res ipsa loquitur. Defendant countered that he lost consciousness immediately prior to the accident and his loss of consciousness rather than his negligence caused the accident. For the most part, this defense rests upon the testimony of defendant's medical expert, Dr. Belmont Thiele, and defendant's own testimony. Dr. Thiele's response to a hypothetical question is the key to defendant's defense and plaintiff concentrates his attack on this hypothetical question.

Plaintiff first complains there was no competent evidence to support the factual assumptions included in the hypothetical question. To understand the specifics of plaintiff's complaint, we set out the critical portion of the trial record reflecting this question.

"Q Now sir, getting on to a different subject for a minute, I want you to assume a few facts, then I want to ask you an opinion based on the facts as I give them to you.

I want you to assume that my client [the defendant], at the time of the accident, was twenty years of age. That, up to the time of the accident, he had no serious physical problems of any kind that he knew of.

I want you to assume, at the time of the accident and just before, he had a period of lost consciousness but nothing particularly to pay attention to and no concern about that.

[Plaintiff's Counsel]: I am objecting. It is not in evidence.

[Defendant's Counsel]: It is going to be in evidence. I will connect it.

THE COURT: Overruled on the grounds he later connects it up.

Q (...) After the accident, he had another period of lost consciousness for the second time and again nobody paid much attention to it, including him. And, I want you to assume some time later he was at work and he had a period of lost consciousness and his employer insisted that he get medical attention. That he got medical attention and it was determined at the hospital that he had what later was diagnosed as Hodgkins disease. Thereafter, he was operated on and a mass was removed from his thorax region, his spleen was removed and tests were done of the liver and massive radiation was given to him as part of his treatment.

That the final diagnosis after all of these things were done to him was that he had Hodgkins Disease, nodular sclerosis. That he was treated with a radical course of radiation therapy to the upper thorax.

Since he had that surgery and since he had that radiation and treatment, he has had no reoccurrence of unconsciousness.

Assuming those facts to be true, I want to ask you two questions. First, based upon reasonable medical certainty, can a condition such as I have described, Hodgkins Disease, Nodular sclerosis, produce periods of unconsciousness in a person that has that condition and unaware of it at the time.

[Plaintiff's Counsel]: I would like to object if I may, first, and make a record. This hasn't even been pleaded.

THE COURT: Overruled.

[Plaintiff's Counsel]: And furthermore, it is contrary to all the evidence that has come in, admissions he has made where he told us in detail exactly the part of his car struck the tree. He was perfectly conscious throughout all that.

THE COURT: Overruled.

A The answer to that is yes.

Q And second, is there a medical way for any doctor to be able to say, however, that on that occasion he did suffer from a period of unconsciousness?

A No, not unless he was unconscious at the time following the accident."

As can readily be seen, the hypothetical question assumes a mass was removed from the region of defendant's thorax, his spleen was removed, tests were done on his liver and he was treated with a radical course of radiation therapy. The only evidence supporting these assumptions was defendant's own testimony, elicited after Dr. Thiele testified. The hypothetical also assumes defendant suffered from Hodgkins disease. The support for this assumption was defendant's own testimony and defense counsel's reading from medical records which were not offered as exhibits. Plaintiff argues the defendant was not competent to define his diagnosis or treatment in medical or scientific terms and plaintiff also complains the medical diagnosis read from the hospital records by defense counsel was hearsay. Therefore, plaintiff reasons, there is no competent evidence supporting the noted assumptions in the hypothetical and, plaintiff concludes, this hypothetical was improper. We need not determine the merit of these arguments, because plaintiff did not perfect these issues for appeal.

In our review, we take the trial record as it stands and so must plaintiff's present counsel on appeal. On the present record, we need not determine whether it was proper to allow defendant to testify about his medical diagnosis and treatment in scientific terms. Nor need we determine whether it was proper to allow defendant's counsel to read from hospital records which had not been formally introduced into evidence. An examination of the record reveals that plaintiff's trial counsel did not object to defendant's competency to testify about his diagnosis and treatment, and plaintiff's trial counsel did not raise any objection when defendant's counsel read from the hospital records. Therefore, plaintiff cannot now complain about the admis-

sion of this evidence. *Dyer v. Globe-Democrat Pub. Co.*, 378 S.W.2d 570, 581–82 (Mo. 1964); *see, e. g., State v. Taylor*, 433 S.W.2d 273, 274–275 (Mo.1968); *see also, Rooney v. Lloyd Metal Products Co.*, 458 S.W.2d 561, 566 (Mo.1970). Without objection, this evidence could properly be used to form the basis for the assumptions in the hypothetical posed to Dr. Thiele, *see, e. g., Conlon v. Roeder*, 418 S.W.2d 152, 159 (Mo.1967), and the evidence was properly before the jury to be weighed and considered. *See Rooney v. Lloyd Metal Products Co., supra* at 566.

 In addition, plaintiff's complaint suffers from another fatal procedural defect. At the time the hypothetical question was posed, plaintiff's trial counsel did make a general objection that the factual assumptions included in the hypothetical were not supported by the evidence. As the record quoted above reflects, the objection was overruled on the condition defendant's counsel would later "connect up" these assumptions with appropriate evidence. Later, during defendant's direct examination, plaintiff's counsel made an objection which may have been a reassertion of the original objection and then asked for a mistrial. For our purpose here, we assume the original objection was either continuing or reasserted. In either event, the objection was not sufficiently specific to point out and define the alleged error to the trial court and, thus, preserved nothing for our review. An objection to a hypothetical question on the ground it assumes facts not in evidence must be specific. *Denney v. Spot Martin, Inc.*, 328 S.W.2d 399, 402–403 (Mo.App. 1959); *see Nagel v. Bi-State Devel. Agency*, 567 S.W.2d 644, 646 (Mo.banc 1978). Counsel must point out those assumptions of fact which are not supported by the evidence and, thus, improperly included. *Scheipers v. Mo. Pac. R. Co.*, 298 S.W. 51, 54 (Mo. 1927); *Denney v. Spot Martin, Inc., supra* at 402–403. Plaintiff's objection was not sufficiently precise to enable defendant to respond intelligently and to enable the trial court to rule intelligently. Therefore, the general objection of plaintiff's trial counsel preserved nothing for our review. *E. g., Brown v. Payne*, 264 S.W.2d 341, 346 (Mo. 1954).

Plaintiff next attacks the detail of the hypothetical question. Plaintiff asserts the question should have defined the nature of Hodgkins disease in more detail and should have been more exact in defining defendant's particular symptoms. Again, the lack of specificity in the objection at trial precludes plaintiff from raising this complaint on appeal. Plaintiff was required to inform opposing counsel and the trial court of what was improperly omitted from the hypothetical, if he wished to perfect the record for appeal. *Nagel v. Bi-State Devel. Agency, supra* at 646; *Cole v. Evans*, 546 S.W.2d 748, 750 (Mo.App.1977).

Plaintiff next complains about the order of proof. Plaintiff argues the hypothetical question was improperly posed to Dr. Thiele prior to the admission of evidence supporting the facts assumed in the hypothetical. This order of presenting the evidence, plaintiff contends, prevented his trial counsel from properly cross examining Dr. Thiele. We disagree.

 At times, it may be the better practice to establish the factual assumptions of a hypothetical question before the hypothetical is asked. However, the order of proof alone does not create prejudice. Thus, the order of proof is a matter left to the sound discretion of the trial court. *E. g., Martin v. Springfield City Water Co.*, 128 S.W.2d 674, 678 (Mo.App.1939). No prejudice is normally worked by asking the hypothetical question first, if the facts assumed in the question later come into evidence. *Sabbath v. Marcella Cab Co.*, 536 S.W.2d 939, 941 (Mo.App.1976); *Martin v. Springfield City Water Co., supra* at 678. As noted, in the present case, the factual assumptions of the hypothetical question were supported by the evidence, and plaintiff has not demonstrated any prejudice worked against him by the supporting evidence following rather than preceding the facts assumed in the hypothetical. This complaint is without merit.

 Finally, plaintiff contends the verdict for defendant was "not supported by

substantial evidence." We disagree. In our review of a jury verdict, we do not determine the credibility of the witnesses, resolve conflicts in testimony, or weigh the evidence. These tasks are quite properly those of the jury. *E. g., Neavill v. Klemp,* 427 S.W.2d 446, 449–450 (Mo.1968); *Machens v. Machens,* 263 S.W.2d 724, 734 (Mo. 1953). We do review the evidence in the light most favorable to the jury verdict. *See, e. g., Machens v. Machens, supra* at 734. From our review of the present record, we find substantial evidence to support the jury verdict.

Defendant testified he was in good health prior to the accident. He also testified he lost consciousness just before the accident and through expert testimony developed a plausible medical reason for his loss of consciousness. This is sufficient evidence to show defendant lost consciousness prior to the accident because of a health condition of which he was unaware. This evidence clearly supports defendant's position that he was not negligent prior to the accident. *Reece v. Reed,* 326 S.W.2d 67, 71 (Mo.1959).

Plaintiff attacks defendant's version of the accident on three grounds. Plaintiff argues defendant's testimony that he lost consciousness was completely contradicted by other testimony of defendant in which defendant, according to plaintiff, recounted significant facts which could only have occurred after defendant lost consciousness. In his testimony, defendant offered at least one rational explanation of this asserted conflict. He learned of these facts after the accident. Plaintiff refuses to accept this explanation. Apparently, the jury did accept it.

Plaintiff also reasserts his argument that the hypothetical question was improper and argues defendant failed to establish he had Hodgkins disease or that Hodgkins disease was the cause of his loss of consciousness. We have previously laid this argument to rest.

Plaintiff's third attack is neither clear nor explicit. Plaintiff argues that defendant's version of the accident as resulting from his loss of consciousness is clearly refuted by the testimony of a police officer called by plaintiff. This refutation is apparently based upon plaintiff's view of how scientific facts and logic dictate the accident must have taken place. Plaintiff argues that if defendant's car left the road where and when defendant said he lost consciousness, the car could not "have ended up where it did." This reasoning, plaintiff claims, is corroborated by the police officer, who testified that if defendant "was traveling in a straight line over January in a westward direction at that point, there is no way he could have hit the tree without hitting any other tree or any other obstacle on the right side of the street."[1] Both plaintiff's reasoning and the police officer's opinion assume that scientific fact and common sense dictate that defendant's car must have traveled in a straight line from the point defendant lost consciousness until the point of impact. Neither the record nor logic dictate this assumption. The jury weighed all the evidence, in particular, the police officer's opinion. The jury gave the evidence pertinent to the point in issue the weight the jury believed it deserved. We find no reason to disturb that evaluation.

Judgment affirmed.

SMITH, P. J., and SIMON, J., concur.

---

1. The police officer also testified: "[i]f [defendant] was traveling westbound and would not deviate in any way, he could make connection with 6507, the resident building there," rather than the tree in evidence.