**Raymond TREON and Vernon Munson, Appellants,**

v.

**Rick HAYES, Valgene Hayes and V & R Farming, Inc., Respondents.**

No. WD 38090.

Missouri Court of Appeals, Western District.

Dec. 23, 1986.

David A. McAllister, Brunswick, for appellants.

R.M. Gifford, Green City, James P. Valbracht, Chillicothe, for respondents.

Before CLARK, C.J., GAITAN, P.J., and TURNAGE, J.

GAITAN, Presiding Judge.

Plaintiffs-appellants, Raymond Treon and Vernon Munson, brought this civil action against defendants-respondents, Rick Hayes, Valgene Hayes, and V & R Farming, Inc. claiming negligence in the use (spraying) of 2–4–D, a chemical. The plaintiffs assert that the defendants caused damage to their watermelon crop as a result of the drift of spray of 2–4–D used by defendants to spray their corn crop which was adjacent to plaintiffs' crop. This matter was tried to a jury and a verdict returned in favor of the defendants. Plaintiffs appeal alleging the verdict was against the greater weight of the evidence. The judgment of the trial court is affirmed.

At trial, Treon testified that in 1984 he and Munson had an oral agreement whereby Treon would grow a watermelon crop on Munson's land and Treon would pay Munson 25% of the gross crop. A watermelon crop was planted on April 24th or 25th of 1984 and the crop sprouted a couple of weeks later. On June 8, 1984, the plants were 3 to 5 inches tall according to Treon. In 1984, the planting was done in 70 rows which were 12 feet apart and about 550 feet long. The plants themselves were thinned so that each plant would be about 18 inches apart.

According to the record, the day of June 8, 1984, was a nice day with a southwesterly breeze. This was the date that Rick Hayes sprayed his corn crop. Treon testified that there was a 10 to 15 mile per hour breeze. Vernon Munson testified that the breeze was 5 to 6 miles per hour. Rick Hayes testified that the breeze was not more than 3 to 4 miles per hour. Rick Hayes testified that he could see the mist coming from the sprayer and that it appeared to be settling on the ground. He further testified that as he approached the watermelon patch he lowered his spray booms as an added precaution to prevent any drifting of the spray.

On that day, Treon had a discussion with Rick Hayes concerning the spraying. Treon testified that Rick Hayes told him that he didn't think the spray would hurt his watermelon. Rick Hayes testified that he told Treon that the spray wasn't drifting. After these conversations Treon took pictures of Rick Hayes spraying the field in case any problems arose. Treon testified that the next day the watermelon plants appeared to be damaged. Treon and Munson both testified that they did not take any further pictures or notify defendants that they claimed defendants' spraying damaged the watermelon crop until Labor Day of 1984.

Plaintiffs' expert, Raymond Kimmel, testified that if the watermelons were planted on April 24 or 25, he would expect the watermelon plants to have been 2 to 3 feet long on June 8, 1984. He further testified

that if the plants were 3 to 5 inches tall on June 8th, it would indicate that the plants were stunted. Kimmel could not fix the period of time when the watermelons were exposed to 2–4–D.

Plaintiffs' other expert, Ronald Alexander, testified that the watermelon plants should have been about 2 to 3 feet long on June 8, 1984. Alexander further acknowledged that the University of Missouri Guide No. 6280 entitled "Growing Watermelon In Missouri" is a reliable guide. Alexander acknowledged the recommendation in that publication that in order to produce melons 20 to 25 pounds, they should be planted 3 to 4 feet apart and in order to produce larger melons the space should be doubled. Alexander further testified that damaged melons should be removed from the vines in order to allow marketable melons to grow, and that Treon had not removed the alleged unmarketable melons from the vines. Alexander further testified that some of the symptoms he observed could have been caused by moisture stress.

Raymond Treon was the only witness who testified to the computations of alleged damages. Treon testified that he expected an average of 1½ watermelons per plant and 366 plants per row or 549 watermelons per row. He used an average of 35 pounds per melon at eight cents per pound for Black Diamond watermelons and figured that 15 rows of Black Diamond watermelons were totally destroyed. An average of 30 pounds at eight cents per pound was used by Treon for the Big Crimson Sweets. Treon testified that 50% of 15 rows were damaged. He computed his damages at a total of $33,818.40 less expenses he saved of $1,261.62 by not marketing his produce. Therefore, his total loss was $32,556.68. Treon's testimony of gross income for the melon crops was $43,068.92 for 1984, even with his alleged damage.

On cross-examination Treon testified that in 1983 he planted 106 rows of melons on land adjacent to and south of the land which he planted in 1984 and that the land was comparable. In 1983 the rows were 400 feet long. He testified that 1983 was a bad year for melon growing and he grossed $31,637.00. The 1984 crop was planted on the same land that was used in 1983. In 1985, 106 rows of melons were planted of which 79 rows were watermelons. The rows were 400 to 420 feet long and Treon testified at trial that 1985 was as good as 1984 for melon production. Treon had previously testified at his deposition that 1985 was better than 1984. In 1985, Treon's gross profit from watermelon was $41,650.40. Other than his 1984 tax return, Treon produced no records concerning his watermelon production or expenses at trial.

The jury returned a verdict in favor of defendants and against plaintiffs.

■ The only point which plaintiffs raise on appeal is that the jury verdict is not supported by substantial evidence. Under Missouri law, a jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict. *Maxam v. Dillon,* 674 S.W.2d 258, 260 (Mo.App.1984). Such issues as the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony are not matters for appellate review. *Maxam v. Dillon,* 674 S.W.2d at 260; *Fowler v. Daniel,* 622 S.W.2d 232, 236 (Mo.App.1981). This court is to review the evidence "in the light most favorable to the jury verdict." *Fowler,* 622 S.W.2d at 236.

■ Rick Hayes testified that on or about June 8, 1984, he sprayed the corn field adjacent to plaintiffs' watermelon crop. He observed that there was a slight breeze of approximately 3 to 4 miles per hour. He testified that he could see the spray from the spray boom and that it appeared to him that the spray was going directly to the ground. Hayes further testified that as he approached plaintiffs' field he lowered the spray boom as an added precaution to prevent drifting. He further testified that he didn't think that there was spray drifting over to plaintiffs' watermelon crop. The jury could have believed that based on the testimony of Rick Hayes there was no drifting of the spray.

In addition, plaintiffs' own evidence constitutes evidence from which a jury could and apparently did find that plaintiffs were not damaged as a result of defendants' actions. Treon testified that he planted the 1984 watermelon crop on April 24th or 25th. The crops sprouted within a couple of weeks. On June 8, the watermelon plants were 3 to 5 inches tall. Even though both of plaintiffs' experts testified that they thought the crop had been damaged by 2–4–D, both indicated that the watermelon plants should have been 2 to 3 feet long on June 8th, rather than 3 to 5 inches tall. Moreover, Alexander admitted that the plants should have been 3 to 4 feet apart in order to produce 20 to 25 pound melons. Treon used average weights of 30 and 35 pounds in calculating his damages, even though he stated that the plants were only 18 inches apart. Alexander also testified that Treon should have removed the damaged melons from the vines in order to allow the marketable melons to grow. Finally, Alexander admitted that some of the symptoms displayed by the watermelon crop could have been caused by moisture stress.

Further, Treon's answers with regard to damages might have been considered evasive and therefore, could have created some doubt in the minds of the jury as to Treon's credibility. Treon testified that he took pictures of Rick Hayes spraying his field on June 8, 1984, in case problems arose. He also testified that the damage to the watermelon plants was apparent the next day. In spite of this, he did not take pictures of the plants, keep records, or notify defendants that he believed his crop was damaged by 2–4–D until Labor Day in 1984.

Plaintiffs' reliance upon *Faire v. Burke*, 363 Mo. 562, 252 S.W.2d 289 (1952) is misplaced. *Faire* was a court-tried case. Therefore the scope of appellate review in *Faire* was much broader than in the present jury-tried case.

The judgment of the trial court is affirmed.