Fred A. STEIF and Maurine
Steif, Appellants,

v.

Dr. Ester LIMPIPHIPHATN,
Respondent.

No. 58725.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Sept. 3, 1991.

1. To facilitate the discussion of the facts and issues, we use the singular form of plaintiff to

Robert H. Pedroli, Daniel J. Gauthier, Robert H. Pedrolie & Assoc., Clayton, for appellants.

Maurice B. Graham, Daniel P. Fall, Schnapp, Graham, Reid & Fulton, Fredericktown, for respondent.

AHRENS, Judge.

In this medical malpractice case, plaintiffs Fred R. Steif and Maurine Steif appeal from a jury verdict in favor of defendant Dr. Ester Limpiphiphatn. Plaintiffs' sole point on appeal is that the verdict was against the weight of the evidence in that all probative facts support a verdict for plaintiffs. We affirm the judgment of the trial court.

Plaintiff[1] was hospitalized under the care of defendant from March 20 until March 26, 1986 when he was discharged at his request. He was readmitted on March 27, 1986 when he suffered a respiratory arrest, and remained hospitalized under defendant's care until March 31, 1986.

Plaintiff claims all probative facts showed that defendant was negligent in monitoring plaintiff during the first hospitalization: in failing to obtain arterial blood gas tests upon his admission, when defendant prescribed Librium and oxygen which depress respiration, and when plaintiff showed signs of marked mental and physical deterioration; and in releasing plaintiff in a depressed and toxic condition which subsequently caused his respiratory arrest and damage.

We review the evidence in the light most favorable to the jury verdict. *Fowler v. Daniel*, 622 S.W.2d 232, 236 (Mo.App.1981). At the time of his hospitalization, plaintiff

refer to Fred A. Steif, because Maurine Steif's claim is derivative of his claim.

was 57 years of age. He had smoked cigarettes for 40 years and had been a drinking man since age 30. He had a history of chronic obstructive pulmonary disease (COPD). In the late 1970s and early 1980s he was twice hospitalized in an alcohol treatment program, first for nine days and then for thirty days. Plaintiff was hospitalized for cirrhosis of the liver in 1978. While being treated for alcoholism as an inpatient in 1981, plaintiff went into respiratory failure. Since 1981 he used an oxygenator while sleeping. In 1983, he passed out at home and was hospitalized for emphysema and shortness of breath. The same year, it was determined he could no longer work.

Defendant's admitting or provisional diagnosis during plaintiff's March 20, 1986, hospitalization included COPD, coronary insufficiency probable with possible liver cirrhosis, chronic alcoholism, transient cerebral ischemia and carotid stenosis. His lungs were congested, he was wheezing and short of breath, had left side chest pain, dizziness, indigestion, flatulence, bloatedness, and some frequency in urinating. His color was good, there was no cardiac arrythmia, and his vital signs were stable.

Defendant's orders included an electrocardiogram, chest x-ray, pulmonary function test, throat culture and gall bladder ultrasound. She placed plaintiff on a diabetic diet because of a history of diabetes. She prescribed a water pill for high blood pressure and swelling of the feet, nitroglycerin as needed for chest pain, diabetes medication, a sleeping pill, and a bronchodilator and other treatment for the COPD and wheezing. She ordered oxygen as needed, the same as plaintiff's pre-admission oxygen dosage. Because plaintiff was an alcoholic with an ongoing drinking problem, defendant prescribed 25 milligrams of Librium four times per day, to avoid withdrawal symptoms and tremors. She did not order arterial blood gas tests. The doctor reviewed a preadmission carotid artery study and placed the patient on a heart monitor. She also arranged for consultations by a cardiologist and a neurologist.

Plaintiff improved during the course of his hospitalization. When he was discharged on the morning of March 26, 1986 his lungs were clear, there was no wheezing, his color was good, he was oriented and talking to the doctor. On defendant's orders, the hospital staff did not administer a dose of Librium to plaintiff on the morning of March 26, 1986. Plaintiff was instructed by defendant to quit drinking and smoking. Defendant wanted him to stay a few more days for some gastrointestinal studies, but plaintiff wanted to go home. He agreed to have the tests run later, and was discharged. Plaintiff drove to the pharmacy and dropped off prescriptions given to him by defendant, and then drove home. Plaintiff did not take the prescribed Librium; it was returned to the pharmacy unopened.

Plaintiff returned to the hospital on the early morning of March 27 in respiratory distress. He suffered respiratory failure, was unresponsive and in critical condition, and was placed on a ventilator. The emergency room record reflected: "Wife states patient had four shots of whiskey yesterday. Stated that's about what he usually drinks." Plaintiff's wife did not recall making that statement, but acknowledged that plaintiff usually had three or four shots a day. Defendant doctor testified that during plaintiff's second hospitalization, one of the nurses saw plaintiff smoking cigarettes while there was oxygen at bedside. The nurse reprimanded plaintiff. Plaintiff denied this incident.

During the course of plaintiff's second hospitalization, he improved remarkably, was able to breathe on his own, sat up in bed and the chair, was assisted in going to the bathroom, and was on oxygen through a nasal canula. His vital signs were stable and chest sounds were good. He was discharged on March 31 at his request for transfer to another hospital in the care of Dr. McCarthy.

There was conflicting expert testimony at trial. Plaintiff introduced testimony from Dr. Martinez, a toxicologist, who reviewed plaintiff's medical records and depo-

sitions of physicians. He confirmed that plaintiff had a history of alcohol abuse and cigarette addiction. Dr. Martinez opined that the nursing notes indicated plaintiff experienced clinical depression during his March 20 hospitalization, that his Librium level was at a toxic level which could have contributed to a respiratory situation, and that the doctor's failure to take blood gases violated a standard of care owed the patient.

An internal medicine specialist, Dr. McCarthy, testified on behalf of plaintiff that based upon his review of the treatment provided by defendant doctor, she violated the standard of care by not monitoring arterial blood gases, administering a sedative without monitoring whether it would depress the patient's breathing ability, and discharging the patient in an essentially unknown condition. He admitted that plaintiff was going to get worse no matter what, regardless of the standard of care.

Defendant adduced testimony from Dr. Cooksey, a cardiologist, who saw plaintiff as a consultant during his March 20 hospitalization. He testified that in his opinion defendant's prescription of Librium was entirely appropriate, although he would not have started plaintiff at that level. When he saw plaintiff, the patient was not overly sedated clinically. He stated that getting blood gases was up to the clinical judgment of the doctor. When he saw plaintiff, there was no need to run blood gases, although he would have done so. When asked about the failure to take blood gases during the first hospitalization, Dr. Cooksey testified: "I can't say it's a violation of the standard of care."

Dr. Huxstep testified that he is a medical director of a nursing home, with experience in treating patients with COPD and alcoholism. He reviewed plaintiff's medical records at defendant's request and concluded that getting blood gases would not have influenced plaintiff's treatment and was not important in so far as his care; that the dosage of Librium was a very common dose for alcoholics, even for those with COPD; that plaintiff was followed appro-priately from a clinical standpoint; and what defendant did or did not do was not responsible for plaintiff's respiratory arrest.

Dr. Shen, a pulmonologist, reviewed the medical records and testified that the Librium dosage administered was considered the standard dose, and was an appropriate decision given plaintiff's history. He strongly believed that Librium had no role in the plaintiff's respiratory arrest. He further opined that the respiratory arrest did not permanently damage plaintiff's condition. In regard to blood gases, he stated he would have obtained them, and believed the standard of care would require obtaining them, but in this case it made no difference in the final outcome at the time of plaintiff's discharge.

The defendant testified at length concerning her examination, care and treatment of plaintiff. She explained she administered an appropriate dosage of Librium to plaintiff who was an alcoholic with a serious drinking problem to avoid withdrawal symptoms and tremors. She testified that she did not order blood gases because the patient's color was good, he was not receiving oxygen at the time of admission, had no cardiac arrythmia, and his vital signs were stable. Defendant stated that monitoring blood gases probably would not have made any difference, and stated that in her opinion she was not negligent in prescribing Librium and in not ordering blood gases.

█ Under Missouri law, a jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict. *Treon v. Hayes,* 721 S.W.2d 789, 791 (Mo.App.1986) (*citing Maxam v. Dillon,* 674 S.W.2d 258, 260 (Mo. App.1984)). Such issues as the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony are not matters for appellate review. *Treon,* 721 S.W.2d at 791.

█ Plaintiff has failed to establish that there was a complete absence of probative facts to support the verdict. As previously noted, there were substantial differences of expert medical opinion as to whether the treatment rendered by defendant was ap-

propriate and whether there was a violation of a standard of care owed plaintiff. In addition to defendant's testimony, there was substantial expert opinion testimony from Doctors Cooksey, Huxstep, and Shen which supported the verdict in favor of defendant.

▆ Whether a verdict in a medical malpractice case is against the weight of the evidence is for the trial court to determine, not the appellate court. *Longmore v. Merwin*, 585 S.W.2d 545 (Mo.App.1979); *see Stanford v. Morgan*, 588 S.W.2d 89, 93 (Mo.App.1979). It was plaintiffs' obligation to prove their case to a jury's satisfaction and a jury could return a verdict against plaintiffs even in the absence of any evidence contrary to that produced by plaintiffs. *Ackerman v. Lerwick*, 676 S.W.2d 318, 322 (Mo.App.1984).

Here Dr. Limpiphiphatn denied any negligence and testified that her treatment was appropriate and did not violate a standard of care owed to plaintiff. There was other medical testimony to the same effect, which constituted probative facts which support the jury verdict. *Treon*, 721 S.W.2d at 791. We affirm the judgment of the trial court.

REINHARD, P.J., and CRIST, J., concur.