**Ralph MILLS and Ielane Mills, his wife, Plaintiffs–Respondents,**

v.

**Jerry CRAWFORD, Defendant–Appellant.**

No. 17494.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 13, 1992.

Richard D. Moore, Todd F. Thorn, West Plains, for defendant-appellant.

W. Swain Perkins, Thayer, for plaintiffs-respondents.

PARRISH, Judge.

Ralph Mills and Ielane Mills (plaintiffs) sued Jerry Crawford (defendant) for defendant's alleged negligence in "burning brush, wood, grass, leaves and undergrowth on his property" and leaving "the fire unattended, thereby negligently allowing it to spread onto the property of plaintiffs." Plaintiffs claimed damages for "approximately fifty acres of plaintiffs' improved pasture land and hay fields [that] was [sic] burned and destroyed" and for "approximately one mile of plaintiffs' fence [that] was burned and destroyed." The case was tried before a jury. The jury rendered its verdict in favor of plaintiffs and assessed damages in the amount of $3,500. The trial court entered judgment in accordance with the verdict. Defendant appeals. This court reverses and remands.

Defendant presents three points on appeal. He contends the trial court erred in admitting evidence that fires had occurred on defendant's property at times other than on January 11, 1990. He further contends that the trial court erred in failing to direct a verdict for defendant at the close of all the evidence and in not granting his Motion for New Trial for the reason that plaintiffs failed to submit sufficient evidence to make a submissible case. As his third point on appeal, defendant contends that the trial court erred in submitting plaintiffs' verdict-directing instruction, Instruction No. 8, in that the instruction "failed to set forth all

the ultimate facts, issues, or elements necessary to sustain a verdict."

Because this appeal includes a claim that plaintiffs failed to make a submissible case, a full review of the evidence is required. In its review of the evidence, this court accepts as true "all facts established by substantial evidence which tend to support plaintiff[s'] right to recover." *Sprague v. Riley*, 427 S.W.2d 263, 264 (Mo. App.1968). Reasonable inferences will be drawn from evidence favorable to plaintiffs' theory of recovery. *Id.* To the extent that defendant's evidence tends to defeat plaintiffs' claim, it will be rejected. *Id.* Further, the judgment, having been based upon a jury verdict, is not to be overturned unless there is an absence of probative facts to support the verdict. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 145 (Mo.App.1989).

Defendant owns real estate in Oregon County that adjoins real estate owned by plaintiffs. On January 11, 1990, a fire burned approximately forty acres of pasture and timber on plaintiffs' property. The fire originated on defendant's property, north of plaintiffs' property. It began at a location on defendant's property north of a county road. The county road bisects defendant's land. The fire burned to the county road. It crossed the road and burned across a strip of defendant's land that lay between the road and plaintiffs' property. The fire continued onto plaintiffs' property. It burned the pasture and timber about which plaintiffs complained in their suit against defendant.

The weather on January 11 was dry and windy. Defendant was having some farm ponds cleaned by the use of a bulldozer operated by Rusty Mooney. "In the middle of the day or the late morning," Mr. Mooney saw smoke "probably a hundred and fifty (150) yards or two hundred (200)" from where he was working. At the time he saw the smoke, Mr. Mooney was working on a farm pond located near the county road that bisects defendant's property. He had cleaned one or two ponds earlier. After Mr. Mooney saw the smoke, defendant drove up in his pickup. Defendant told Mr.

Mooney to try to put out the fire. The two of them went to the location of the fire. The fire was beginning to burn on the south side of the road that crossed defendant's property by the time he and Mr. Mooney got there. Mr. Mooney testified:

We went down and it'd crossed the road. It looked like it was just startin' on the south side. We took the dozer and went over there and started tryin' to put it out. The wind was blowin' and it was jumpin' across where we'd made a deal and we couldn't do nothin' with it on the south side.

They were unable to extinguish the fire. Defendant told Mr. Mooney that "he was gonna go get some help." Mr. Mooney continued to fight the fire. He worked several hours attempting to cut a fire path with the bulldozer.

Other persons arrived at the fire and helped fight it. Tommy Loyd lived "about a mile and a half on the same road" from plaintiffs' property. On January 11 he was returning to his home when he saw smoke in the direction where his house was located. He met his son en route and was told that the fire was located on defendant's property. Mr. Loyd went to the site of the fire. When he arrived the fire was on the north side of the road. He saw defendant standing alongside a bulldozer. The bulldozer operator was seated on the machine. Mr. Loyd asked about the fire. Defendant told him, "That road will stop it." Mr. Loyd then drove down the road along the area that was burning. He saw two small places where the fire had jumped the road. He again met his son on the roadway and told the son to go home and get some broom rakes. He returned to where defendant was. Along the way back he observed four places where the fire had jumped the road. Mr. Loyd reported the fact to defendant that he had seen four places where the fire had crossed the road and that he had sent his son to get broom rakes. Defendant told the bulldozer operator to cross the road and try to stop the fire.

Shortly thereafter, the bulldozer operator returned and told defendant he could

not get around the fire. Defendant replied, "I'm goin' after something to fight it with." Defendant went to his house to get rakes. As defendant arrived at his house, Andy Blankenship was arriving.

Mr. Blankenship owned property that he described as "lay[ing] next to [defendant]." They shared a common boundary line along "[t]hree-quarters of a mile." He had observed smoke as he was returning to his home from the town of Alton. Mr. Blankenship went to his house, got a sandwich to eat on his way to the fire, and drove to defendant's house. Mr. Blankenship got out of his vehicle and asked defendant "if he needed any help there." He testified:

Q. Did he tell you he did?

A. He said the fire had jumped the road on 'em over there.

Q. He said what?

A. It had jumped the road on 'em over there and got away from 'em.

Q. So what did you then do?

A. I got in my truck and went on around to where the fire was.

Q. Did he follow you or did he go in front of you or what?

A. He was gettin' rakes or tools or somethin' there and I went on and he come on over there after that.

Mr. Loyd saw defendant at the fire later that day. Defendant was fighting the fire.

Defendant testified that on the day the fire occurred, he "was cleaning out ponds with a bulldozer." He testified that he and Rusty Mooney had finished one pond and had gone to another. The pond they had finished was "probably a quarter of a mile" from the one that was "by the side of the road." He testified:

Q. Tell the jury the direction you took.

A. Well I came out the road and Rusty went across the field.

Q. Okay.

A. I couldn't drive the truck across that ground.

.        .        .        .        .

Q. Okay. And how long a period of time did it take Rusty to get down there with the bulldozer?

A. Oh, it took him, I would say, thirty (30) minutes.

Defendant testified that he left the bulldozer operator to check on his cattle to see if any were outside their pasture. He stated he was away from the bulldozer operator checking cattle "[p]robably a good thirty (30) minutes." Defendant stated that he then went to where the bulldozer was working at the pond that was near the road. He testified:

Q. Okay. Now when you got up there and Rusty, I take it, was working on the pond?

A. Yes.

Q. Could you tell the jury, in sequence, what happened then?

A. Well we saw a little bit of smoke down the road. I said, Rusty, we'd better go and see about that." So we went and looked.

Q. All right, did you walk or how did you go?

A. Drove the truck.

Q. You drove the truck?

A. Yes.

Q. Now did you go out and go down the road or—

A. Yes, down the road.

Q. And how far was that from the pond?

A. Oh, a half a quarter. At least a half a quarter.

Q. About two hundred (200) yards or so.

A. Yes.

Q. What did you find when you got there?

A. We saw a little bit of fire burnin' there beside the road.

.        .        .        .        .

Q. Now when you saw that what did you and Rusty do?

A. We went back and got the dozer.

Q. Now then what did you do?

A. I told Rusty to go to work and I would go to the house and get some tools.

Defendant was asked when Mr. Loyd arrived at the fire. He estimated that it

was thirty minutes or more after the time defendant and Mr. Mooney had observed smoke, explaining, "I guess he came up about the time we went down there. It took a little time to get that bulldozer to the fire." Defendant testified that the fire "had spread quickly" by the time they got the bulldozer.

Plaintiffs' attorney was also permitted to inquire of several witnesses, each time over defendant's objection for relevancy, whether they had seen fires on defendant's property on other occasions, i.e., on dates other than on January 11, 1990, the date of the fire that is the basis of this action. Some answered that they had. With the exception of a fire that occurred a short time after January 11 on defendant's property, there was no evidence about the origin of any such fires or about any involvement of defendant with respect to the other fires. There was testimony, including defendant's testimony, that defendant had burned some brush piles on his property a short time after the January 11 fire; that he had three people (one witness had only seen two) and a bulldozer with an operator present as a safeguard to prevent its spread. That fire had crossed "just a little bit" onto a neighbor's property, other than plaintiffs'. The trial court, without explanation as to why the particular time frame was selected, did restrict the inquiry about prior fires to fires that occurred within five years preceding January 11, 1990.

Defendant's second point on appeal will be addressed first. Whether the remaining points on appeal require discussion, and, if so, to what extent, depends on the resolve of the second point on appeal. The second point asserts that there was insufficient evidence from which the jury could find that defendant "started the fire or was any way negligent."

Plaintiffs' petition alleged that defendant "was burning ... on his property" and that

he "left the fire unattended, thereby negligently allowing it to spread onto the property of plaintiffs." The verdict-directing instruction, Instruction No. 8, told the jury:

Your verdict must be for plaintiffs if you believe:

First, *defendant started a fire on his property,* and

Second, defendant knew, or in the exercise of reasonable care, should have known that the fire would spread, and

Third, *the fire set by defendant* spread to plaintiffs' property, and

Fourth, defendant was thereby negligent, and

Fifth, as a direct result of such negligence, plaintiffs were damaged. (Emphasis added.)

■ The liability of a possessor of land for harm inflicted upon others by reason of an activity conducted on the possessor's land is explained in Restatement (Second) of Torts § 371 (1965):

A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

■ The "activity" that is alleged to have been carried on by defendant on his property was "burning" and "[leaving] the fire unattended." [1] The record in this case is lacking of any direct evidence that defendant set the fire that burned onto plaintiffs' land and damaged plaintiffs' property. Negligence may be shown, however, by circumstantial evidence. *Rauschelbach v. Benincasa,* 372 S.W.2d 120, 124 (Mo. 1963). *See also Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 222 S.W.2d 87, 90 (1949). The question thus becomes whether, in this case, the circumstances shown

---

1. Plaintiffs specifically alleged that defendant started the fire in question, a fact denied by defendant. Absent a showing that defendant set the fire, it is one of unknown origin. Generally, a property owner is not responsible for damages resulting from a fire occasioned by others unless, due to conditions on his property, he

should have anticipated that the fire was likely to start. *See Hesse v. Century Home Components, Inc.,* 267 Or. 53, 514 P.2d 871 (1973); *Roy v. Domingue,* 493 So.2d 880 (La.App.1986); *Fridge v. Talbert,* 180 La. 937, 158 So. 209 (1934).

by the evidence are such that "a reasonable probability that the defendant was negligent may be fairly inferred from it." *Yoos v. Jewish Hospital of St. Louis,* 645 S.W.2d 177, 183 (Mo.App.1982). However, "if under the evidence viewed most favorably to the plaintiffs, the question of negligence can be determined only by resort to conjecture and surmise on the part of the jury, the plaintiffs failed to make a submissible case." *Id. citing Rauschelbach, supra,* 372 S.W.2d at 125.

Plaintiffs rely upon three circumstances to prove that defendant committed a negligent act—the act of setting the fire in question and leaving it unattended while realizing, or under circumstances where he should have realized, that there was unreasonable risk that the fire would progress onto plaintiffs' property and inflict harm. Plaintiffs rely upon the fact that defendant was not in the presence of Rusty Mooney during the time when the fire ignited; that there had been one or more fires on other occasions at unspecified times (other than within the last five years) and of unproven origin on defendant's property, the testimony about which was objected to by defendant as irrelevant, an issue that this court does not here decide; and that Mr. Loyd testified that defendant and Mr. Mooney were standing, observing the fire when Mr. Loyd first arrived at the scene of the fire, rather than actively taking steps to put it out.

Upon review of the evidence, this court holds that the circumstances upon which plaintiffs rely to establish commission of a negligent act by defendant amount only to conjecture and surmise; that the essential facts necessary to establish negligence on the part of defendant rest solely upon speculation or conjecture. As such, the verdict that was rendered for plaintiffs is without support of probative facts. The evidence failed to support sufficient inferences upon which the trial court could predicate submissibility. The trial court should have granted defendant's Motion for Directed Verdict. By not doing so, it committed error that requires this court to reverse the judgment it rendered.

Having determined that defendant's second point on appeal is well-founded and requires reversal, the remaining points raised on appeal are moot and, for that reason, are not addressed. The judgment of the trial court is reversed. The case is remanded and the trial court is directed to enter judgment of dismissal with costs to be taxed against plaintiffs.

PREWITT, P.J., and CROW, J., concur.