**VBM CORPORATION, INC., Respondent,**

v.

**MARVEL ENTERPRISES, INC., d/b/a Marvel Equipment Company, Inc., Appellant.**

**WD 45328.**

Missouri Court of Appeals, Western District.

Nov. 17, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Charles E. Hammond, Overland Park, KS, for appellant.

Stanley M. Wilkins, Kansas City, for respondent.

BEFORE ULRICH, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

The defendant Marvel Enterprises, Inc. [Marvel] appeals from a judgment entered by the trial court in favor of the plaintiff VBM Corporation, Inc. [VBM] for money owed on an account. The award was $24,977.48 for the principal amount due and interest of $2,557.35, for a total judgment of $27,534.83. The money judgment was preceded by an order of summary judgment that concluded Marvel's liability to VBM on the account. The amount of the liability was determined at a separate hearing, and entered as the judgment.

Marvel contends on appeal that the summary judgment was adjudicated before Marvel completed discovery and hence was an abuse of discretion. Marvel contends also that there remained a genuine issue of material fact as to whether VBM, a foreign corporation, was doing business in Missouri without the certificate of authority required by § 351.570, RSMo 1986 [now § 351.572], and so whether the trial court had subject matter jurisdiction of VBM's claim. § 351.635, RSMo 1986 [now § 351.574.1].

We affirm the order of summary judgment as to liability and the consequent money judgment.

VBM is a corporation organized under the laws of Kentucky with its offices located in that state. VBM did not obtain a certificate of authority from the secretary of state to transact business in Missouri. Marvel is a corporation organized under the laws of Missouri with its principal place of business in this state.

VBM manufactures and distributes hydraulic automotive lifts. VBM and Marvel contracted whereby Marvel acted as distributor of VBM automotive lifts and accessories. In addition, Marvel purchased from VBM lifts and accessories for its own inventory, which were resold to its customers within the area of its distribution agreement. The automobile lifts in the Marvel inventory were also used to fill orders by VBM sales personnel to national accounts concluded in Marvel's territory.

In August 1990, VBM brought suit against Marvel for automotive lifts purchased but not paid for. In the course of preparation of the litigation for trial, the parties conducted discovery. Marvel presented its first request for discovery to VBM in January 1991. It was a set of interrogatories and a request for production of documents. The purpose of the discovery was to establish that VBM was transacting business in Missouri without the certificate of authority required of a foreign corporation, and so could not maintain a proceeding in a court of this state. §§ 351.572, 351.574. Numerous among the interrogatories and the documents requested of VBM related to business activity in Missouri with distributors other than Marvel. VBM objected to most of the discovery, and responded to the rest. Marvel presented its second series of discovery in

May 1991, and VBM objected and responded as before.

VBM moved for summary judgment against Marvel in July 1991. *After* that motion was brought, Marvel moved to compel compliance with the second request for discovery, that the court order VBM to answer the interrogatories and make production of documents, and also for sanctions. In August 1991, the court denied sanctions and entered its order of summary judgment on the issue of liability. The amount of the liability was then adjudicated on a hearing and rendered as a judgment.

■ The first point contends that it was error to order summary judgment before Marvel completed its discovery. Marvel argues that despite its "vigorous" initiatives for discovery, VBM made evasive objections and never fully responded. The information sought related to the sale of automotive lifts and other business activities in VBM's territory in Missouri, and so was relevant on the issue of the jurisdiction of the court to hear the suit, and "also on whether the account of appellant [Marvel] has been properly credited with the commissions that were earned from such sales."

We do not disagree with the principle Marvel cites from 6 MOORE'S FEDERAL PRACTICE § 56.02[6] that, as a general matter, "a motion for summary judgment should be denied, or at least deferred, if the adverse party has not yet had an opportunity to conduct adequate discovery in opposition to the motion." We do disagree that Marvel was without such opportunity,

and, in the full circumstances, regard the complaint of unfair discovery administration as disingenuous. The record of the litigation is a chronicle of inattention by Marvel to timely procedures and heedlessness to legitimate requests for discovery by VBM.

Virtually at the outset of the litigation, Marvel was sanctioned with $300 in costs for untimely responsive pleading. It made no initiative for discovery from VBM until January 1991, six months after the commencement of suit, and no motion to compel discovery until another six months later, *after* being confronted with the motion for summary judgment. In that interim, and *before* the motion for summary judgment, VBM had made requests for production of documents and for the deposition of Marvel president, Howard Finke, both of which were not honored. The court ordered a sanction of $500 against Marvel for failure to give the requested discovery. Finke then appeared for deposition, but asserted his right under the Fifth Amendment to refuse answers.[1]

The order of summary judgment adjudicated the fact of liability by Marvel to VBM, and not its extent. It is evident from both the record and the points on appeal, that the complaint of unfair administration of discovery relates not to the fact of liability, as such, but to its extent.[2] It relates also to the gathering of information as to the nature and extent of VBM's business activity in Missouri, and hence to the jurisdiction of the court to hear the case. The answer to the petition does, indeed, plead the affirmative defense of accord and

1. Among the documents requested for production by VBM, in its round of discovery, were all checks by Marvel evidencing payment to VBM. In his letter to VBM, Marvel president, Finke, claimed that its check No. 2680 for $24,229.42 issued to VBM on March 1, 1990, was paid by the bank but not credited by VBM to Marvel as payment. There was clear evidence, not rebutted by Marvel, that check No. 2680 was the altered form of check No. 2690, dated February 6, 1990, for $4,895.80 the check actually submitted by Marvel to VBM in payment of the account and cashed by VBM. The subterfuge was detected from the check submitted by Finke with his letter. It was shown by the records custodian of Marvel's bank that the amount of

every check drawn upon the Marvel account is encoded in the right hand corner of the check's face. Comparison of the canceled check submitted by the Finke letter with check No. 2690 discloses that check No. 2690 was altered to show $24,992.42 as having been paid. This episode may explain Finke's reluctance to respond to the deposition inquiry.

2. The Finke letter concludes with the request that VBM make "the necessary adjustments so that your account balance more nearly reflects our balance." It is evident that Marvel acknowledges some "account balance" that is, some liability to VBM.

satisfaction, in that VBM accepted, executed and negotiated checks with a restrictive endorsement, without taking reservation to them, after a controversy as to the liability of the maker had arisen. Marvel also asserted in response to the motion for summary judgment that the liability by Marvel to VBM was the subject of the accord and satisfaction, so that a genuine issue of material fact remained as to liability.

 The burden to prove accord and satisfaction was on Marvel as proponent of the affirmative defense. *Sturmville Lumber Co. v. Davis*, 416 S.W.2d 49, 50–51[1–5] (Mo.App.1967). The point on appeal, however, does not assert that the entry of summary judgment prior to the opportunity to complete discovery impaired Marvel in the proof of accord and satisfaction, nor does the argument of the point. How the stunted discovery may have prejudiced the proof of that issue, therefore, is not a subject of the appeal before us. Rule 84.-04(d), (e).

What remains of the point relied on is that the order of summary judgment prematurely curtailed the opportunity for Marvel to complete discovery on the issue of the jurisdiction of the court to entertain suit by VBM. Marvel means that it was an abuse of discretion by the court to order summary judgment when the interrogatories and the request for documents to VBM remained unanswered. Marvel argues that the responses would have demonstrated "a continuing involvement with its products after they ha[d] come to rest in interstate commerce," as to become the transaction of intrastate business and so subject VBM to the certification requirement of [then] § 351.570. The completed discovery, Marvel argues, would have elicited responses of sales of automotive lifts by VBM to national accounts after they had "come to rest in the State of Missouri" and of warranty services for automotive lifts sold in Missouri. Moreover, the deposition of Scott Pollock, VBM regional manager, which was requested of counsel but never accommodated, would have disclosed that

VBM was transacting business in Missouri. This collated discovery information, Marvel concludes, would have proven that the certificate of authority requirement of [then] § 351.570 was applicable to VBM and that the lack of compliance denied VBM the right to maintain a proceeding in our courts under [then] § 351.635.[3]

Marvel argues also that the unfairness of the adjudication of summary judgment while discovery still pended was compounded by its heedlessness of Marvel's efforts to resolve VBM's objections without the intervention of the trial court. There are letters by Marvel to VBM after its objections to the first request of discovery and the second request for discovery indicating that Marvel attempted to understand the bases of VBM's objections and to modify the discovery requests accordingly.

It was no mark of diligence for discovery, however, to seek the ground of VBM's last objections only *after* being confronted with a motion for summary judgment. Nor was it a mark of diligence by Marvel to seek the order of the court that VBM comply with the discovery requests and for sanctions only *after* being confronted with a motion for summary judgment.

That is not to say, however, that even as modified the discovery requests were not objectionable. The validity of the order of the court denying the pending Marvel motions to compel compliance by VBM to the Marvel requests for discovery and for sanctions is not contested. It stands as if adjudicated that the Marvel motions were without merit. Nor does the informal intention by Marvel to take the deposition of VBM regional sales manager Pollock, but only *after* confronted with the motion for summary judgment, either prove diligent discovery or the unfairness of the adjudication of summary judgment before that discovery was begun under formal process.

 The trial court is vested with wide discretion in the administration of the rules of discovery. It is only an unjust exercise of discretion that a court of review will

---

**3.** What the responses to the interrogatories and the request for production of documents would yield to Marvel, of course, remains indeterminate.

disturb. *State ex rel. Metro. Transp. Services, Inc. v. Meyers,* 800 S.W.2d 474, 476[3–7] (Mo.App.1990). The justness of a discretion exercised against a request for more discovery before adjudication of a pending motion for summary judgment, within the circumstances, depends upon the history of the case as well as upon the conduct of the parties and the good faith of the request. It is measured, above all else, by the purposes the discovery process are meant to accomplish.

■ Discovery is a search for evidence in anticipation of the litigation of a pending action. The rules of discovery are designed to preserve not to conceal evidence, and to prevent unjust surprise in the trial of the litigation. *Combellick v. Rooks,* 401 S.W.2d 460, 464[9, 10] (Mo. banc 1966); *J.B.C. v. S.H.C.,* 719 S.W.2d 866, 869[1] (Mo.App.1986). Thus, discovery is a search for true evidence. In the administration of the rules of discovery, the trial court has the affirmative obligation to prevent the subversion of its purposes. *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 328 (Mo.App.1985).

■ The attempt by Marvel to fraudulently disguise altered evidence as authentic evidence in the case was before the court. Also before the court was Marvel's resistance to the court's directive to give discovery and the sanctions imposed for that obduracy. It was not unjust for the court in light of these abuses by Marvel of the discovery process, and Marvel's evident indifference to its legitimate purpose, to refuse Marvel further access to its procedures before adjudicating summary judgment. The first point is denied.

Marvel argues also that the lack of further discovery notwithstanding, there was a genuine issue of material fact on the evidence already before the trial court. Therefore, the order of summary judgment was erroneous. The fact in issue, as Marvel frames the question, is "the extent of the transaction of business by [VBM] in the State of Missouri." Marvel argues that there was before the court "compelling evidence" that VBM "transacted business" in this state so as to require a certificate of authority under [then] § 351.570, [now § 351.572]. In the absence of such a certificate, a foreign corporation such as VBM transacting business in Missouri may not maintain a proceeding in any court in this state [then] 351.635, [now § 351.574.1].

■ It is to be noted that the challenge to the jurisdiction Marvel now raises to impugn the summary judgment was raised by a motion to dismiss, and rejected by the court. Then, as now, the burden to prove facts that demonstrate want of subject matter jurisdiction rests on the proponent. *Parmer v. Bean,* 636 S.W.2d 691, 694[4–7] (Mo.App.1982). Marvel must establish by a preponderance of the evidence that the court is without jurisdiction of the VBM suit. *Crofts v. Harrison,* 772 S.W.2d 901, 902[1, 2] (Mo.App.1989). Thus, both in terms of a motion to dismiss under Rule 55.27(g)(3) and a motion in opposition to summary judgment under Rule 74.04, the initiative is upon the party who bears the risk of nonpersuasion on the issue to show facts that raise a genuine issue of jurisdiction. *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d 137, 142[2] (Mo.App. 1989), *American Family Mut. Ins. Co. v. Lacy,* 825 S.W.2d 306, 308[1, 2] (Mo.App. 1991). Accordingly, the burden of proof was on Marvel to show that VBM was "transacting business" in this state. *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d at 142[2].

Marvel argues from the premise that "[a] business that is conducted solely in interstate commerce does not need to register within the State of Missouri as a foreign corporation or seek authority to do business" in this state. The argument then cites *Superior Concrete Accessories, Inc. v. Kemper,* 284 S.W.2d 482, 489 (Mo.1955) and *Western Outdoor Advertising Co. v. Berbiglia, Inc.,* 263 S.W.2d 205, 209[1] (Mo. App.1953) for the principle that "continued dealing with the property after interstate commerce has ended is evidence of *intrastate* business activity."

Marvel refers to the affidavits of Marvel president Finke and another Finke that Scott Pollock, VBM regional sales manager, had made calls within Missouri and Kansas for the sale of automotive lifts in Marvel's Missouri inventory. These inci-

dents, Marvel argues, are "direct evidence of continued dealing with the automotive lifts after interstate commerce ha[d] wholly ceased." There was the affidavit by Scott Pollock, however, that all purchase orders required final approval by VBM at its Lousville, Kentucky headquarters before a binding contract was formed. Indeed, § 351.570.2 made explicit that

> ... [A] foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:
>
> . . . . .
>
> (6) soliciting or procuring orders, whether by mail, or through employees or agents, or otherwise, where such orders require acceptance without this state before becoming binding contracts;
>
> . . . . .

See also Superior Concrete Accessories, Inc. v. Kemper, 284 S.W.2d at 486[5, 6].

Marvel argues that the affidavits of the Finkes were to the effect that there were sales from the Marvel inventory which needed the approval only of Marvel. That argument does not cite the precise source of that proof. It was proof, in any event, that the trial court could readily have disregarded, particularly since one of the putative sources was already discredited.

■ In the context of foreign supplier-Missouri distributor, the test that controls the fact issue of "transacting business" within § 351.570, therefore, is not "continued dealing" as Marvel has it. The test is, rather, whether the distributor has a "bona fide and independent status and operation" and is not the "alter ego or 'servant' of the foreign supplier." That is the principle that American Trailers, Inc. v. Curry, 621 F.2d 918, 921 (8th Cir.1980), derives from a delineation of the Missouri cases. It is a statement of principle both valid and authoritative.

■ Nor is there any support in the record to sustain the Marvel contention that VBM provided warranty services to automobile lift customers in Missouri, as Marvel argues to prove "transaction of business." Such activity, even if proven, does not suffice to transform interstate commerce into intrastate business. Id. at 920. See also, Republic Steel Corp. v. Atlas Housewrecking & Lumber Corp., 232 Mo.App. 791, 113 S.W.2d 155, 158[1–2] (1938). The case Marvel cites, Case v. Mills Novelty Co., 187 Miss. 673, 193 So. 625 (1940), is inapposite on the point. It involves neither a distributor-supplier relationship, as subsisted between Marvel and VBM, nor the occasional warranty service alleged. It was a direct sale of equipment from the foreign corporation in Illinois to a resident of Mississippi which included a one-year service and maintenance of the equipment in Mississippi.

■ Marvel also cites the testimony of Lisa Figg, VBM credit manager, given at the hearing to determine the amount of the liability after the entry of partial summary judgment, to sustain the contention that VBM "transacted business" in Missouri through Marvel and so was subject to the certification requirement of the statute. Marvel argues that the evidence shows that "there were sales of automotive lifts by [VBM's] employee in the State of Missouri and that the sales of automotive lifts were delivered from [VBM's] inventory in Missouri." Figg's testimony cannot be understood for the inference that VBM maintained an inventory in Missouri or that VBM had any ownership interest in Marvel's stock. That testimony, no more than the rest, proves that Marvel was not operating independently but was simply " 'carrying on the business of the supplier,' " so that VBM was "transacting business" through Marvel. American Trailers, Inc. v. Curry, 621 F.2d at 921.

The record sustains the determination that Marvel did not carry its burden to prove that VBM "transacted business" within § 351.570 so as to avoid summary judgment as to liability, or the subsequently adjudicated money judgment.

The judgment is affirmed.

All concur.