Mary SIMS, Next Friend for, Jeremy Oldham, Plaintiffs/Appellants,

v.

Dr. Corrine HARMON, in her Representative capacity as Supervisor of the Special School District of St. Louis County, Part of the St. Louis County Public Education System, Karen Kaufmann, in her Representative capacity as Principal of the Southview School, a Public School of the Special School District of St. Louis County and Jane Does, Defendants/Respondents.

No. ED 77212.

Missouri Court of Appeals, Eastern District, Division One.

July 18, 2000.

Gordon E. Freese, St. Louis, for appellant.

Bryan Groh, St. Louis, for respondent.

JAMES R. DOWD, Judge.

Plaintiff/Appellant Mary Sims (hereafter "Mother"), as mother and next friend of

Jeremy Oldham, a minor, appeals from the judgment of the trial court granting Respondent's motion for summary judgment in her lawsuit for injuries sustained by her son while attending the Special School District of St. Louis County.

## FACTS

Plaintiffs alleged in their petition that during the period between October 6, 1998 and October 13, 1998, Jeremy Oldham suffered a severe blunt trauma to his lower back, causing life-threatening internal injuries to his right kidney and necessitating extensive emergency surgery. At the time of the injury, Jeremy Oldham (hereafter "Jeremy") was a student at Southview School, within the Special School District of St. Louis County. From the undeveloped record before us, it seems Jeremy is severely retarded and requires the use of a wheelchair. He cannot verbally communicate, but does so through certain elementary signs and gestures.

On April 14, 1999, Jeremy's mother filed a petition against the Special School District of St. Louis County for personal injury on alternative theories of battery and negligence. The petition also names the superintendent of the Special School District and the principal of Southview School as Defendants in their representative capacities. Mother alleged Jeremy was injured while at school, either by an improperly supervised student who was known to have uncontrollably violent tendencies or by the failure of school officials to follow the District's regulations in lifting Jeremy in and out of his wheelchair.

On May 5, 1999, counsel for Respondents entered his appearance and, on May 17, 1999, filed an answer to Mother's petition. On May, 18, 1999, Mother served her first set of interrogatories on Respondents. On June 16, 1999, Mother filed a motion to compel answers to the first set of interrogatories and Respondents filed a motion requesting an extension of time to respond to those interrogatories. The trial court granted Respondents an additional thirty days to answer the first interrogatories and continued the motion to compel until July 7, 1999.

On July 7, 1999, a scheduling conference was held before Judge Campbell, at which time he placed the case on Track 1, the fastest schedule for discovery, and set a deadline for discovery of January 24, 2000. The trial court also denied Mother's motion to compel answers to the first set of interrogatories. On August 4, 1999, Mother filed an application for a writ of mandamus in an effort to overturn the trial court's denial of her motion to compel. This court denied the application for the writ on August 12, 1999.

On September 8, 1999, Mother's deposition was taken. Mother testified that the only places Jeremy was during the probable time of injury were at home and at school and that Jeremy was never out of her sight while at home. She further testified that Jeremy, while unable to convey the details of how his injury occurred, did indicate through gestures to her and an investigating detective that he was injured while at school.

On September 9, 1999, the depositions of two staff members at Southview school were taken. These staff members acknowledged that Jeremy was not always in their sight while at school and that, near the time of Jeremy's injury, Jeremy was left in a classroom with a violent and aggressive student who had physically hurt one of the staff members that same day. The staff members also admitted that on several occasions Jeremy was improperly lifted in and out of his wheelchair by one person, instead of the two required by school policy.

On September 27, 1999, Respondents filed their motion for summary judgment. On September 28, 1999, Mother served Respondents with her second set of interrogatories with answers due by October 28, 1999. On October 27, 1999, Mother filed her answer to Respondents' motion for summary judgment with a supporting

affidavit of her attorney explaining the need for additional time to complete discovery. Mother's attorney stated in his affidavit that he had not yet received Respondents' answers to Mother's second set of interrogatories, which were not due until the day after Mother's response to Respondents' motion for summary judgment, and that said answers would provide the basis for additional persons to be deposed. In addition, Mother's attorney stated that he had not yet been able to schedule the deposition of Dr. Weber, the surgeon who treated Jeremy and whose testimony would establish when and where Jeremy was injured. Lastly, Mother's counsel argued he had scheduled the deposition of Dr. Garland, Jeremy's personal physician who had also treated Jeremy, for December 16, 1999.

On November 9, 1999, Judge Campbell denied Mother any additional time for discovery and granted Respondents' motion for summary judgment two and one-half months before the discovery was to close according to the scheduling order. Mother appeals.

### ANALYSIS

In her first point on appeal, Mother claims the trial court erred in granting Respondents' motion for summary judgment because the motion was prematurely granted because discovery was not complete.

■ Discovery serves several purposes, including the elimination of surprise at trial, the ascertainment of truth and the narrowing of issues for trial. *Spacewalker, Inc. v. American Family Mut. Ins. Co.*, 954 S.W.2d 420, 423 (Mo.App. E.D.1997). Summary judgment is not appropriate when the nonmoving party has adequately demonstrated that it needs more time for discovery. Rule 74.04(c)(2); *Southard v. Buccaneer Homes Corp.*, 904 S.W.2d 525,

529 (Mo.App. S.D.1995). Rule 74.04(c)(2) states in pertinent part:

> If the party opposing a motion for summary judgment has not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment, such party shall file an affidavit describing the additional discovery needed in order to respond to the motion for summary judgment and the efforts previously made to obtain such discovery. For good cause shown, the court may continue the motion for summary judgment for a reasonable time to allow the party to complete such discovery.

■ The trial court is vested with wide discretion in administering the rules of discovery, and the exercise of the trial court's discretion will not be disturbed by a reviewing court unless exercised unjustly. *Great Western Trading Co. v. Mercantile Trust Co. Nat'l Ass'n*, 661 S.W.2d 40, 43 (Mo.App.1983). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988).

■ The uncontroverted evidence appears to establish that Jeremy is severely retarded and cannot convey to anyone, through traditional means, exactly how and by whom he was injured. In addition, there is testimony that Jeremy's injuries were internal and that no bruising or other outward evidence of injury appeared for days, which further complicates the task of ascertaining exactly when and where Jeremy was injured. Given the serious nature of Jeremy's alleged injuries, it seems this case would call for more discovery, rather than less.[1] Yet there is no indication in

---

**1.** From the record, there already appear to be a number of serious unresolved questions. The question of where, when and how Jeremy was injured and whether any Defendant was responsible requires further investigation. Also at issue may be Jeremy's mental capacity, including his ability to retain and commu-

the record before us explaining why this case was assigned to Track 1—an expedited discovery schedule generally reserved for the simplest cases.

Respondent cites *Lewis v. El Torito Restaurants, Inc.*, 806 S.W.2d 46 (Mo.App. W.D.1991) in support of the trial court's grant of summary judgment in this case. *Lewis* involved a suit filed by an injured bar patron against the bar owners. The plaintiff had been drinking at the bar and was legally intoxicated so one of the bar employees gave him a ride home. Along the way, they stopped at a convenience store to buy cigarettes. The employee went in the store while the plaintiff waited in the vehicle. When the employee returned to the vehicle, he found plaintiff lying unconscious in the parking lot with severe head injuries. Plaintiff could not remember how he was injured, but alleged the bar was liable for failing to protect him from an unknown third party who had beaten him in the parking lot. The *Lewis* trial court granted summary judgment to defendant bar owners and the Western District affirmed, noting that "[t]he record before the trial court is completely barren of any proof supporting plaintiff's allegations of negligence on the part of either defendant." *Id.* at 47.

Respondents in this case liken the *Lewis* plaintiff to Jeremy Oldham, in that "he cannot produce any substantial evidence against the Respondents." We disagree. The plaintiff in *Lewis* was so intoxicated that he could not remember how he was injured and could not point to any evidence that the defendant bar owners were liable. In stark contrast, Jeremy Oldham may likely remember every detail of his injury, including the time, place and origin, but is unable to communicate those details in a conventional manner. Despite his handi-

cap and the grossly inadequate period allowed for discovery, there is clear evidence in the record that he has communicated to his mother and a detective that he was injured while at school. But unlike the plaintiff in *Lewis*, Plaintiffs here have had no opportunity to develop their theory of the case.

Of additional interest is the fact that the *Lewis* plaintiff was allowed to proceed with discovery for twenty-seven months after the filing of the suit before the trial court granted summary judgment. Remarkably, Jeremy Oldham's mother was allowed less than six months after the filing of Respondents' answer in which to complete her discovery—a substantial part of which she spent waiting for Respondents' answers and filing both a motion to compel and a writ of mandamus.[2] Jeremy's mother was summarily denied two and one-half months of the remaining discovery period pre-set by the trial court at the scheduling conference. When computing the number of days for Plaintiffs' discovery exclusive of those attributable to the defendant or arbitrarily deducted by the trial court, the time remaining for Plaintiffs to pursue their claim is grossly inadequate. Here, the court-mandated discovery period had not yet lapsed nor had all parties agreed to hear the motion for summary judgment—both strong indicators that disposition by summary judgment was premature.

Respondents argue in their brief that Plaintiffs failed to show that additional discovery would "shed any light to accomplish the purpose of procuring evidence as to the possible negligence or battery of Respondents." We disagree.

Rule 74(c)(2) requires that a party seeking additional time for discovery file an affidavit "describing the additional discovery needed in order to respond to the

---

nicate information, and, on this, the record is largely undeveloped.

2. Rule 57.01(a)(2) provides that a defendant may serve its answers and objections to interrogatories within forty-five days after service of the summons and petition. The circuit

court minutes show that Defendants in this case requested and were granted an additional thirty days to file their answers. It is unclear from the record when Defendants answered the first set of interrogatories.

motion for summary judgment and the efforts previously made to obtain such discovery." In addressing the trial court's discretion to deny additional discovery, the Western District of this court, in *VBM Corp. v. Marvel Enterprises, Inc.,* looked at several factors:

> The justness of a discretion exercised against a request for more discovery before adjudication of a pending motion for summary judgment, within the circumstances, depends upon the history of the case as well as upon the conduct of the parties and the good faith of the request. It is measured, above all else, by the purposes the discovery process are meant to accomplish. 842 S.W.2d 176, 180 (Mo.App. W.D.1992).

Appellants' affidavit states that Respondents' answers to the second set of interrogatories will provide information as to the identities and activities of the staff members who handled Jeremy and lead to the scheduling of their depositions. The affidavit further states that counsel has attempted to schedule the depositions of Drs. Weber and Tschudin and that those depositions will establish when and where Jeremy's injuries took place—evidence essential to Appellants' case. We find this to be a completely adequate description of the purposes for which the additional discovery was sought in accordance with both Rule 74.04(c)(2) and *VBM Corp. v. Marvel Enterprises, Inc., supra.* To require more would invade the thought processes, discovery and trial strategy of Plaintiffs' counsel.

The history of this case establishes that Appellants actively pursued the case and were seeking additional time for discovery in good faith. There is no evidence in the record that Appellants caused or contributed to any unnecessary delay. To the contrary, the circuit court minutes show that Respondent's prolonged their responses to Mother's first set of interrogatories for an additional thirty days. In addressing the value of the discovery process, the Missouri Supreme Court recently stated:

Pre-trial discovery performs important and legitimate functions. The benefits are numerous: liberal discovery aids in the ascertainment of truth, early disclosure promotes early settlement, surprise is eliminated, issues are narrowed, trial preparation is facilitated, and "relevant" information is obtained. *State ex rel. State v. Riley,* 992 S.W.2d 195 (Mo. 1999).

Here, the trial court's premature termination of Appellants' discovery in a case involving allegations of serious injuries negligently inflicted thwarts the beneficent purposes discovery is designed to promote. We find the trial court erred in denying Appellants' request for additional time for discovery and granting Respondents' motion for summary judgment. Because we hold that termination of discovery was premature, discussion of summary judgment would be inappropriate. The grant of summary judgment is reversed and remanded with instructions to the trial court to allow additional time for discovery prior to a hearing on Respondents' motion for summary judgment.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.